# DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---

LEAGUE OF INDPENDENT FITNESS
FACITLITIES AND TRAINERS, INC.,
BASELINE FITNESS LLC,
BUILDING YOUR TEMPLE LLC,
BYT FITNESS 247 LLC,
CLAWSON FITNESS, LLC,
CLINTON FITNESS, INC.,
D-LUX KARATE UNIVERSITY LLC,
FENTON ATHLETIC CLUB, INC.,
FENTON KARATE, LLC,
FUSION FITNESS 24/7 LLC,
H3 FITNESS LLC,
I FITNESS PERSONAL TRAINING, INC.,
JKP FITNESS, LLC,
JPF ENTERPRISES, LLC,
M FITNESS CLUB, LLC,
MH & AB LLC,
MOTOR CITY CF - ST. CLAIR SHORES, LLC,
NASCOT ENTERPRISES, LLC,
PRISON CITY PHYSIQUE LLC,
RMP FITNESS INC.,
STRENGTH BEYOND LLC,
24/7 BOOTCAMP AND BOXING INC., and
4 SEASONS GYM, LLC,
      Plaintiffs,
v.
GRETCHEN E. WHITMER and
ROBERT GORDON,
      Defendants.

Civil No. 1:20-cv-00458

Hon. Paul L. Maloney

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

ERSKINE LAW, PC
Scott M. Erskine (P54734)
Carly Van Thomme (P59706)
Attorneys for Plaintiffs
612 W. University

Rochester, MI. 48307
(248) 601-4499
serskine@erskinelaw.com
_____

For their First Amended Complaint, Plaintiffs allege as follows:

## INTRODUCTION

1.      Based on speculative modeling on the infectiousness and lethality of a new coronavirus, Governor Whitmer has issued executive orders that have shuttered civil society, placed 10 million people under house arrest, and taken jobs away from nearly 1.2 million people, all without due process of law. The Governor has not disclosed and/or disclosed only a minimal amount of the data or methodology used to create the modeling that purportedly justifies this extreme action. At the same time, through Executive Order 2020-38, she has suspended the Freedom of Information Act through June 4, 2020, preventing any independent assessment of whether the modeling used to justify locking down the entire State is reliable.

2.      The Governor's initial Executive Order was premised on the perceived need to "flatten the curve" so as to avoid overwhelming the State's hospitals and healthcare centers, not to eradicate the virus. Although the curve has been flattened, the Governor has nonetheless issued stricter and confusing executive orders that unreasonably and unnecessarily interfere with Plaintiffs' constitutional rights.

3.      Governor Whitmer's executive orders are unprecedented. For the first time in our State's history—indeed, in our nation's history—the State government is mass quarantining *healthy* people instead of the sick. As a free people, we have the unalienable right to pursue happiness, which includes the freedom to make our own choices about our safety and welfare without unconstitutional interference. In the face of the coronavirus, it

means the freedom to choose whether to stay at home, or to keep calm and carry on with the things that make life worth living.

4.     Plaintiffs are affected by the Governor's orders. Under threat of criminal penalties, they have been forced to close or significantly restrict their businesses, depriving them of their liberty and property interests without due process. At the same time, without offering any justification, the Governor has allowed, and is still allowing, other businesses deemed "critical" to stay open, even though: (*a*) "critical" businesses must adhere to guidance from the U.S. Centers for Disease Control and Prevention ("**CDC**") on "social distancing"; and (*b*) Plaintiffs are fully capable of adhering to those same guide-lines if allowed to reopen.

5.     Although Michigan, like all States in the Union, is expressly guaranteed a republican form of government under Article IV, Section 4 of the U.S. Constitution, the Governor has unilaterally suspended civil liberties and announced that this state of affairs will continue even over the Legislature's objection. When the Legislature announced bills to limit unilateral action and ensure constitutional government remains intact, Governor Whitmer said "***I'm not going to sign any bill that takes power away from me*** or any future governor."

6.     Government by executive order and executive directives —over 90 of them so far—stirs echoes of royal prerogative.

7.     Ours is a constitutional republic that empowers government to act within defined limits. Those limits apply at all times and under all circumstances. In war, in peace, and in pandemics. "No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great

exigencies of government. Such a doctrine leads directly to anarchy or despotism...." *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 120–122 (1866).

8.     Plaintiffs seek a judicial declaration that the executive orders keeping people in their homes and away from their businesses—and all other orders, rules, and enforcement activity related to them—are unconstitutional under the Dormant Commerce Clause, the Privileges and Immunities Clause, the Privileges or Immunities Clause, the Due Process Clause, the Equal Protection Clause, and State law. Such a declaration, and a corresponding injunction, will yield a more rational, pragmatic response to the virus that saves lives, saves livelihoods, and preserves constitutional norms all at the same time.

9.     In short, Plaintiffs bring this lawsuit to define the limits of a State's police power. Whatever its limits, this legal term of art is not some shibboleth that unlocks absolute executive power and casts our Constitution to the wind. The issues raised in this Complaint are novel, and they will not be rendered moot if the executive order is lifted before the Court issues judgment. The issues presented are capable of repetition and are of such importance that they cannot evade judicial review.

## PARTIES

10.     Plaintiff League of Independent Fitness Facilities and Trainers, Inc. ("LIFFT") is a domestic non-profit 501(c)(4) organization with its principal place of business in Wayne County, Michigan. It has over four hundred members throughout the State of Michigan, including but not limited to: Allegan County, Kent County, Kalamazoo County, Macomb County, Oakland County, Ottawa County, and Wayne County, that engage in foreign, interstate, and intrastate commerce. At least 130 of its members operate a fitness facility, with members working out and attending fitness classes in Michigan. Because of Governor

Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, every single one of LIFFT's members have been forced to close or stop training operations since March 16, 2020 through the date of the filing of this Complaint.

11.    Plaintiff Baseline Fitness LLC is a Michigan Limited Liability company with its principal place of business in Oakland County. It engages in foreign, interstate, and intrastate commerce. Baseline Fitness operates as a fitness facility in Oakland County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Baseline Fitness has been forced to close since March 16, 2020 through the date of the filing of this Complaint

12.    Plaintiff Building Your Temple LLC is a Michigan Limited Liability company with its principal place of business in Oakland County. It engages in foreign, interstate, and intrastate commerce. Building Your Temple operates as a fitness facility in Oakland County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Building Your Temple has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

13.    Plaintiff BYT Fitness 247 LLC is a Michigan Limited Liability company with its principal place of business in Oakland County. It engages in foreign, interstate, and intrastate commerce. BYT Fitness 247 operates as a fitness facility in Oakland County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, BYT Fitness

247 has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

14.     Plaintiff Clawson Fitness, LLC is a Michigan Limited Liability company with its principal place of business in Oakland County. It engages in foreign, interstate, and intrastate commerce. Clawson Fitness operates as a fitness facility in Oakland County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Clawson Fitness has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

15.     Plaintiff Clinton Fitness, Inc. is a Michigan corporation with its principal place of business in Macomb County. It engages in foreign, interstate, and intrastate commerce. Clinton Fitness operates as a fitness facility in Macomb County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Clinton Fitness has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

16.     Plaintiff D-Lux Karate University LLC is a Michigan Limited Liability company with its principal place of business in Macomb County. It engages in foreign, interstate, and intrastate commerce. D-Lux Karate University operates as a fitness facility in Macomb County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, D-Lux Karate University has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

17.     Plaintiff Fenton Athletic Club, Inc. is a Michigan corporation with its principal place of business in Genesee County. It engages in foreign, interstate, and intrastate commerce. Fenton Athletic Club operates as a fitness facility in Genesee County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Fenton Athletic Club has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

18.     Plaintiff Fenton Karate, LLC is a Michigan Limited Liability company with its principal place of business in Genesee County. It engages in foreign, interstate, and intrastate commerce. Fenton Karate operates as a fitness facility in Genesee County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Fenton Karate has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

19.     Plaintiff Fusion Fitness 24/7 LLC is a Michigan Limited Liability company with its principal place of business in Wayne County. It engages in foreign, interstate, and intrastate commerce. Fusion Fitness 24/7 operates as a fitness facility in Wayne County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Fusion Fitness 24/7 has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

20.     Plaintiff H3 Fitness LLC is a Michigan Limited Liability company with its principal place of business in Ottawa County. It engages in foreign, interstate, and intrastate

commerce. H3 Fitness operates as a fitness facility in Ottawa County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, H3 Fitness has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

21.     Plaintiff I Fitness Personal Training is the d/b/a of a Michigan corporation with its principal place of business in Oakland County. It engages in foreign, interstate, and intrastate commerce. I Fitness Personal Training operates as a fitness facility in Oakland County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, I Fitness Personal Training has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

22.     Plaintiff JKP Fitness is a Michigan Limited Liability Company with its principal place of business in Kent County. It engages in foreign, interstate, and intrastate commerce. JKP Enterprises operates as a fitness facility in Kent County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, JKP Enterprises has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

23.     Plaintiff JPF Enterprises is a Michigan Limited Liability Company with its principal place of business in Kent County. It engages in foreign, interstate, and intrastate commerce. JPF Enterprises operates as a fitness facility in Kent County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, JPF

Enterprises has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

24.     Plaintiff M Fitness Club, LLC is a Michigan Limited Liability Company with its principal place of business in Macomb County. It engages in foreign, interstate, and intrastate commerce. M Fitness Club operates as a fitness facility in Macomb County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, M Fitness Club has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

25.     Plaintiff MH & AB LLC is a Michigan Limited Liability Company with its principal place of business in Macomb County. It engages in foreign, interstate, and intrastate commerce. MH & AB operates as a fitness facility in Macomb County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, MH & AB has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

26.     Plaintiff Motor City CF – St. Clair Shores, LLC is a Michigan Limited Liability Company with its principal place of business in Macomb County. It engages in foreign, interstate, and intrastate commerce. Motor City CF – St. Clair Shores operates as a fitness facility in Macomb County, with members working out and attending fitness classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Motor City CF – St. Clair Shores has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

27.     Plaintiff Nascot Enterprises is a Michigan Limited Liability Company with its principal place of business in Oakland County, Michigan.  It engages in foreign, interstate, and intrastate commerce. Nascot Enterprises operates fitness facilities in Oakland, Macomb, and Wayne Counties, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Nascot Enterprises has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

28.     Plaintiff Prison City Physique LLC is a Michigan Limited Liability Company with its principal place of business in Jackson County, Michigan.  It engages in foreign, interstate, and intrastate commerce. Prison City Physique operates as a fitness facility in Jackson County, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Prison City Physique has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

29.     Plaintiff RMP Fitness Inc. is a Michigan corporation with its principal place of business in Macomb County, Michigan.  It engages in foreign, interstate, and intrastate commerce. RMP Fitness operates as a fitness facility in Macomb County, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, RMP Fitness has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

30.     Plaintiff Strength Beyond LLC is a Michigan Limited Liability Company with its principal place of business in Kalamazoo County, Michigan.  It engages in foreign, interstate, and intrastate commerce. Strength Beyond operates as a fitness facility in Kalamazoo

County, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, Strength Beyond has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

31.     Plaintiff 24/7 Fitness Bootcamp and Boxing Inc. is a Michigan corporation with its principal place of business in Ingham County, Michigan.  It engages in foreign, interstate, and intrastate commerce. 24/7 Fitness Bootcamp and Boxing operates as a fitness facility in Ingham County, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, 24/7 Fitness Bootcamp and Boxing has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

32.     Plaintiff 4 Seasons Gym is a Michigan Limited Liability Company with its principal place of business in Gratiot County, Michigan.  It engages in foreign, interstate, and intrastate commerce. 4 Seasons Gym operates as a fitness facility in Gratiot County, with members attending workouts and classes in Michigan. Because of the Governor Whitmer's executive orders and Director Gordon's Emergency Order and Emergency Rule, 4 Seasons Gym has been forced to close since March 16, 2020 through the date of the filing of this Complaint.

33.     According to IHRSA (International Health & Racquet Sports Association), which is the national governing body that oversees the fitness and gym industry, there are over 1,100 gyms and fitness centers with over 1.5 million members in Michigan as of 2019.

34.     Many businesses who have either remained open or are in the process of opening are businesses that are open to the general public.  In contrast, Plaintiffs are

member-based fitness facilities and do not receive nearly the amount, if any, of "walk-in" business that retailers, restaurants or other businesses rely on for profit.

35.    Defendant Gretchen E. Whitmer is the Governor of the State of Michigan. Plaintiffs sue her in her official capacity only.

36.    Defendant Robert Gordon is the Director of the Michigan Department of Health and Human Services. Plaintiffs sue him in his official capacity only.

## JURISDICTION

37.    This action challenges Governor Whitmer's Executive Orders 2020-43 through 2020-96 (and their predecessors and future iterations of these orders) (the "**EOs**"), and Director Gordon's Emergency Order and Emergency Rule (all collectively, the "**Lockdown Orders**"), related to the closure of Plaintiffs' businesses, which Plaintiffs believe violate the following clauses of the U.S. Constitution:

(a)  Dormant Commerce Clause of Article I, Section 8;

(b)  Privileges and Immunities Clause of Article IV, Section 1;

(c)  Privileges or Immunities Clause of the Fourteenth Amendment;

(d)  Due Process Clause of the Fourteenth Amendment; and

(e)  Equal Protection Clause of the Fourteenth Amendment.

38.    The Court therefore has federal-question jurisdiction under Article III of the U.S. Constitution and 28 U.S.C. § 1331.

39.    Plaintiffs seek declaratory relief and a preliminary and permanent injunction against the Lockdown Orders and similarly crafted orders and rules issued in the future. Accordingly, they bring this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the All Writs Act, 28 U.S.C. § 1651.

40.     Plaintiffs also challenge that the EOs as exceeding the Governor's authority under the separation-of-powers doctrine enshrined in Article III, Section 2 of the Michigan Constitution of 1963; the Emergency Powers of the Governor Act ("**Emergency Powers Act**"), Mich. Comp. Laws §§ 10.31–10.33; and the Emergency Management Act, Mich. Comp. Laws §§ 30.401–30.421. Accordingly, Plaintiffs also invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

41.     Governor Whitmer is a resident of, and the principal office of the Governor is located in, Lansing, Michigan.

42.     Director Gordon's principal office is located in Lansing, Michigan.

43.     A substantial part of the events giving rise to the claims in this Complaint occurred in Lansing, Michigan.

44.     The city of Lansing is the seat of government for the State of Michigan. Michigan Const. art. III, § 1 (1963). It is located within Ingham County, which is within the territorial jurisdiction of the Western District of Michigan. 28 U.S.C. § 102(b)(1). This Court is therefore a proper venue for this action under 28 U.S.C. § 1391(b)(1)–(2).

## EXECUTIVE ACTION

### *Executive Orders*

45.     The Emergency Powers Act permits a governor, "during times of great public crisis, disaster, rioting, catastrophe, or similar public emergency within the State, or reasonable apprehension of immediate danger of a public emergency of that kind, when public safety is imperiled, ... [to] proclaim a state of emergency and designate the area

involved ... [and to] promulgate **reasonable** orders, rules, and regulations as he or she considers necessary to protect life or property or to bring the emergency situation within the affected area under control." Mich. Comp. Laws § 10.31(1) (emphasis added). Executive orders issued under this Act have the force of law.

46.     The Emergency Management Act permits a governor, upon the declaration of an emergency or a disaster, to compel evacuation, to control entry to, exit from, and the occupancy of premises within, the affected area, among other things. Mich. Comp. Laws § 30.405(1). Executive orders issued under this Act have the force of law.

47.     On March 11, 2020, Governor Whitmer issued Executive Order 2020-04, which declared a "state of emergency" under both Acts based upon two presumptive diagnoses of coronavirus disease ("**COVID-19**"), a respiratory illness caused by virus named the severe acute respiratory syndrome coronavirus two ("**SARS-CoV-2**" or the "**coronavirus**").

48.     On March 16, 2020 Governor Whitmer issued Executive Order 2020-09 under both Acts.  This order closed to the public, restaurants, food courts, cafes, coffee houses, and other places of accommodation.  Under this order, "gymnasiums, fitness centers, recreation centers, indoor sports facilities, indoor exercise facilities, exercise studios, and spas" were also forced to close.  A willful violation of EO 2020-09 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33 and 30.405(3). All Plaintiffs complied with Executive Order 2020-09 and closed their doors.

49.     On March 22, 2020, the Governor issued Executive Order 2020-20 under both Acts. This order closed to the public a wide range of public accommodations, including all restaurants, food courts, cafes, coffeehouses, and other places of public accommodation

offering food or beverages for on-site consumption. A willful violation of EO 2020-20 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-20(6).

50.     On March 23, 2020, the Governor issued Executive Order 2020-21 under both Acts. This order prohibits all in-person work that the Governor deems "not necessary to sustain or protect life." A willful violation of EO 2020-21 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-20(6).

51.     On April 9, 2020, the Governor issued Executive Order 2020-42 under both Acts. This order extends EO 2020-21 through April 30, 2020, while imposing even greater restrictions on the general public than before. A willful violation of EO 2020-42 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-42(17).

52.     On April 13, 2020, the Governor issued Executive Order 2020-43 under both Acts. This order extends EO 2020-20 through April 30, 2020. A willful violation of EO 2020-43 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-42(7).

53.     On April 24, 2020, the Governor issued Executive Order 2020-59 under both Acts. This Order extends EO 2020-42 through May 15, 2020. It purports to loosen some restrictions imposed under EO 2020-42 as part of a phased reopening of the economy. A willful violation of EO 2020-59 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-59(20).

54.     On April 30, 2020, the Governor issued Executive Order 2020-66, terminating the state of emergency under the Emergency Management Act which was set to expire when the state legislature did not approve of an extension of the Act under the terms proposed by the Governor.

55.     One minute after terminating the state of emergency under the Emergency Management Act on April 30, 2020, the Governor issued Executive Orders 2020-67 and 2020-68.  In Executive Order 2020-67 the Governor declared a new state of emergency under the Emergency Powers of the Governors Act.  In Executive Order 2020-68, the Governor declared a new state of emergency under the Emergency Management Act.   A willful violation of either EO 2020-67 or 2020-68 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-59(20).

56.     On May 7, 2020, the Governor issued Executive Order 2020-77 under both Acts. EO 2020-77 started opening the economy slowly, allowing landscapers, the manufacturing sector, garden stores and nurseries, bicycle repair shops, real estate companies, moving companies, a limited amount of retail with major restrictions and construction to reopen with many restrictions.  All other sectors, including fitness centers and gyms, remained closed.  A willful violation of EO 2020-59 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-59(20).

57.     On May 18, 2020, the Governor issued Executive Order 2020-92 under both Acts. EO 2020-92 divided the state into eight regions.  Further, the EO 2020-92 continued opening the economy slowly, allowing restaurants and bars to reopen at 50% capacity in

Regions 6 and 8 only (the Upper Peninsula and small parts of the northern Lower Peninsula), subject to other provisions of Executive Order 2020-91 which was issued the same day.  For Regions 6 and 8 only, EO 2020-92 allowed individuals to gather in a social gathering of up to 10 people, allowed business offices to open if workers cannot work remotely, and allowed retail to return in limited capacity. All other sectors, including fitness centers and gyms, remained closed.  A willful violation of EO 2020-59 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-59(20).

58.    On May 21, 2020, the Governor issued Executive Order 2020-96 under both Acts. EO 2020-96 made hotels and motel workers statewide part of the "critical infrastructure," but did not allow hotels or motels to open gyms, pools, spas, or dining and entertainment areas.  Further, the EO allows auto dealerships to open in a limited capacity statewide as of May 26, 2020.  The EO further allows retail stores to open in a limited capacity statewide on May 26, 2020.  Finally, the EO will allow non-emergency medical, dental and veterinary services to resume on May 29, 2020.  All other sectors, including fitness centers and gyms, which were the first businesses shuttered by the Governor, remained closed.  A willful violation of EO 2020-59 is a misdemeanor for which a person can be imprisoned for up to 90 days and fined up to $500. Mich. Comp. Laws §§ 10.33, 30.405(3), and 750.504; EO 2020-59(20).

*Action by MDHHS*

59.    On April 2, 2020, Director Gordon issued an Emergency Order under the Michigan Public Health Code. Mich. Comp. Laws § 333.2253(1). This order requires every

person in Michigan to comply with EO 2020-20 and EO 2020-21, and authorizes police and prosecutors to enforce those EOs as incorporated through the Emergency Order. *See* https://perma.cc/K6ZH-HS6N. This order also applies to EOs 2020-42, 2020-43, and 2020-59. A violation of an MDHHS order is a misdemeanor punishable by imprisonment for up to six months and a fine of $200, or both. Mich. Comp. Laws § 333.2261. Thus, Director Gordon's Emergency Order effectively doubles the period of incarceration authorized under the Governor's executive orders.

60.     At the same time, Director Gordon issued an Emergency Rule establishing a $1,000 civil penalty for violations of Director Gordon's Emergency Order. *See* https://perma.cc/ 8W5C-E98N.

61.     Since April 2, 2020, any person who violates Governor Whitmer's EOs (and thereby automatically violates Director Gordon's Emergency Order and the Emergency Rule) can now be imprisoned for up to six months, assessed a penal fine of up to $500, and assessed a civil fine of up to $1,000.

## GENERAL ALLEGATIONS

62.     Although the coronavirus is highly contagious, it does not invariably result in COVID-19. For those who do develop COVID-19, the mortality rate is low. As of May 31, 2020, the State reported on its official coronavirus webpage 57,397 confirmed cases of COVID-19 (including those who no longer have COVID-19), which is roughly .57% of the State population. As of that same date, the State reported 5,747 deaths related to COVID-19. As a result, only 0.057% of the State's population has succumbed to the virus.

63.     More important than the total number of cases is that, as of May 31, 2020, **Michigan has only 13,807 *active* COVID-19 cases**, which includes at least 1,800 cases

involving prisoners in Michigan (who by their very nature cannot spread the virus as easily as someone who is not incarcerated).  Michigan currently ranks 18th in states with known active cases. See https://www.worldometers.info/coronavirus/country/us/. **The 13,807 known active cases represents .14 percent of the population who are capable of spreading the virus to other residents**.

64.     In all likelihood, the survival rate in Michigan is far higher than discussed in Paragraph 62 above. Recent antibody testing conducted in New York State and a study in Los Angeles suggest that millions more have been infected with the coronavirus than previously known, and that the supermajority of those previously infected were either asymptomatic or experienced mild reactions to it. In New York, this new information has dropped the mortality rate to 0.5%—*i.e.*, a survival rate of 99.5%. In Los Angeles, it dropped the mortality rate to 0.1–0.3%—*i.e.*, a survival rate of 99.7–99.9%. There is no reason to believe that Michigan is exempt from this good news.   Further, the most recent CDC projections in the U.S. show a mortality rate of .2 to .4%.  See https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html  As more Michiganders are tested, increases in positive tests will yield a higher survival rate.

65.     The number of deaths caused by COVID-19, while unquestionably tragic, is not "unprecedented," as routinely claimed. What is unprecedented is Governor Whitmer's response to it.

66.     In 1918, the deadly Spanish Flu swept the globe, infecting over 500 million people (roughly one third of the world population, killing between 20 million and 50 million people worldwide.  Over 675,000 people in the United States lost their lives to the flu.  With a population of 3.7 million people, nearly 15,000 Michiganders died in the pandemic.  In

response to the Spanish Flu, Governor Albert Sleeper issued an order closing places of public amusement. Individual cities decided whether to close schools. Work continued. Governor Sleeper wisely balanced public health while preserving commerce. The current executive orders fail to do so, overreaching to such extent that the State's economy is spiraling toward a depression.

67.     In the 1940s and the early 1950s, annual summer polio epidemics killed thousands of children before a vaccine was found. Even under such dire circumstances, several Michigan governors of both parties, including Governor G. Mennen Williams, refrained from violating constitutional norms with excessive executive orders during those years.

68.     In the late 1960s, the Hong Kong Flu swept across the globe killing more than 1 million people. The CDC estimated that 100,000 people died in the U.S. Michigan, like other States, was affected. Governor George Romney did not place residents under house arrest or shutdown the economy then, either.

69.     Governor Whitmer repeatedly states that decisions must be made on data and science. Yet, despite the positive State-specific data, the Governor *__tightened restrictions__* through an executive order that the *Wall Street Journal* described as the "most excessive" in the country.

70.     Among other enhancements, the new order imposed harsher restrictions on the ability to travel and banned people from visiting their families, working, and purchasing a variety of everyday items at stores. The new order was announced at 3:00 p.m. on April 9th, and became effective at 12:01 a.m. on April 10th—*i.e.*, on less than 12 hours' notice. The

Governor timed EO 2020-42 to prohibit families from gathering to celebrate Easter Sunday and Passover.

71.     Although her previous order allowed "critical infrastructure workers" to perform in-person work—defined as those workers described as critical by the director of the U.S. Cybersecurity and Infrastructure Agency ("**CISA**") in guidance issued March 19th— in compliance with CDC guidance on "social distancing," Governor Whitmer has expressly, arbitrarily, and capriciously refused to adopt CISA's updated definition of "critical infrastructure workers," in EO 2020-42 and EO 2020-59. Other governors who have issued similar executive orders have adopted the updated federal definitions. Governor Whitmer has never explained why these new definitions have not been, and cannot be, adopted in Michigan. This is further evidence that the Governor is unreasonably keeping more Michiganders locked up in their homes than necessary.

72.     Taking Governor Whitmer at her word that she wants to make decisions based on data, and lacking confidence in the Governor's modeling because the underlying data and methodology is unavailable to the public, a group of businesses (not named in this lawsuit) hired Anderson Economic Group ("**AEG**") to analyze the infection curve and the economic effects of her EOs, and they provided the expert's report to the Governor on April 13, 2020. The Governor has not responded. At a press conference on April 27, 2020, the Governor confirmed that she has not read the expert's report in the two weeks since it was delivered.

73.     An economic depression is predictable following the shutdown of civil society caused by the Lockdown Orders. Businesses around Michigan are permanently closing because they cannot pay employees and vendors. More will be forced to permanently close the longer that the Lockdown Orders and any similarly drafted successor orders are in place.

74.     Consistent with the assessments in the AEG report, in the first month of the lockdown order, nearly 1.2 million Michiganders reportedly filed for unemployment, the largest number of unemployment claims in the State's history. Michigan is among the top five worst states for unemployment. *See* Exhibit 1, AEG Report. According to Jeff Donofrio, Director of the Michigan Department of Labor and Economic Opportunity, this means more than 25% of Michigan's workforce filed for unemployment in the span of four weeks because of the Lockdown Orders. For context, the national average unemployment rate during the Great Depression of 1929 was 26%.

75.     Employers fund unemployment benefits. Mich. Comp. Laws § 421.13. The Governor offered scant insight on how the unemployment system can keep paying benefits if employers can't operate their businesses. If businesses can't operate, then they can't generate revenue. And, if they can't generate revenue, then they have no way of paying into the unemployment fund.

76.     According to the U.S. Department of the Treasury, as of March 31, 2020, Michigan's unemployment trust fund balance was $4.55 billion. State officials predict that the fund will be drained in July. *See* https://perma.cc/R54P-GTMU. One recent prediction is that the Michigan Unemployment Trust Fund will be drained within two months and incur a $15 billion deficit. Taxes on businesses may double to pay back the loans that the State would require to keep paying unemployment. This will leave less money for businesses to rehire workers and prolong the economic devastation.

77.     Unemployment is not the only factor in play. For those fortunate enough to remain employed during this time, many of them are subject to furloughs, pay cuts, and mandatory sick leave. According to a recent study by the Anderson Economic Group, nearly

1.5 million Michiganders will lose significant income because of the coronavirus and the Governor's orders by the end of April. Exhibit 1, AEG Report.

78.     Plaintiffs want to reopen their business to help their current and former employees (whom they hope to rehire) put food on their tables, keep roofs over their heads, and clothes on their backs. Governor Whitmer and Director Gordon forbid them from doing so under pain of criminal punishment and civil fines. Plaintiffs should not be forced to choose between risking criminal prosecution and economic sanctions on the one hand or exercising their constitutional rights on the other.

79.     Plaintiffs also want to reopen their businesses to help the public in general (and their members specifically) in their ability to fight COVID-19. It is well documented that obesity, diabetes and hypertension are some of the highest risk factors that can lead to a poorer outcome for Michiganders that are infected with and contract COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Physical exercise, both cardiovascular exercise and strength training help improve those with at-risk factors associated with COVID-19.

*See*, *eg*,  https://www.norwalkhospital.org/newsroom/article-listing/adults-exercise-and-covid19.

80.     Further, Plaintiffs are in a unique position to help those who have not contracted and may never contract COVID-19, but who are nonetheless struggling during these challenging times. Physical exercise has been proven to assist people with their mental health. Researchers have found that exercise helps with both depression and anxiety, two mental conditions that people across Michigan are struggling with in the face of Defendants' lock down orders, social distancing, job loss, and dealing with unwell family members. *See*

https://www.ted.com/talks/wendy_suzuki_the_brain_changing_benefits_of_exercise?language=en;
*See also* https://www.psychologytoday.com/us/blog/what-works-and-why/201803/how-your-mental-health-reaps-the-benefits-exercise.

81.     On April 15, 2020, Planet Fitness sent a letter to Governor Whitmer outlining the economic impact that the closures have had on its business, the benefit that gyms have to the health and well-being to the citizens of Michigan, and outlining a comprehensive plan for reopening safely. *See Exhibit 2*, Letter from Planet Fitness to Governor Whitmer, dated April 15, 2020.

82.     Likewise, on May 15, 2020, the Michigan Fitness Clubs Association sent a letter to Governor Whitmer.  This letter also outlined the economic impact that the closures have had on its business, the benefit that gyms have to the health and well-being to the citizens of Michigan and outlining a comprehensive plan for reopening safely. *See Exhibit 3*, Letter from MFCA to Governor Whitmer, dated May 15, 2020.

83.     Also on May 15, 2020, Plaintiff LIFFT, Inc. sent a letter to Governor Whitmer. As with the previous two letters, the letter from LIFFT to the Governor outlined the economic impact that the closures have had on its members, the benefit that gyms have to the health and well-being to the citizens of Michigan and outlining a comprehensive plan for reopening safely. *See Exhibit 4*, Letter from LIFFT, Inc. to Governor Whitmer, dated May 15, 2020.

84.     Upon information and belief, there has been no response from the Governor's Office to any of the correspondence outlined in paragraphs 81 through 83.

85.     On Friday, May 22, 2020, the initial Complaint was filed in this action. Service was accepted on behalf of Defendants on Tuesday, May 26, 2020.

86.     Plaintiffs incorporate all of the foregoing paragraphs into each of the following causes of action.

## COUNT I
## DORMANT COMMERCE CLAUSE

87.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

88.     The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate commerce with foreign Nations, among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

89.     In its dormant state, often called the Dormant Commerce Clause, the Commerce Clause precludes States from enacting legislation that discriminates against or impermissibly burdens interstate commerce. State laws that facially discriminate against interstate commerce are invalid *per se* under the Commerce Clause. This is true also of State laws that are facially neutral, if they impermissibly burden interstate commerce in practice. *West Lynn Creamery* v. *Healy*, 512 U.S. 186, 194–195 (1994).

90.     Although the Dormant Commerce Clause is usually invoked to challenge protectionist laws that favor in-state businesses over out-of-state businesses, the Clause has a broader function: to guarantee for all citizens the right to access and participate in interstate commerce. Just as no State can prevent out-of-staters from engaging in commerce

with its residents, no State may prevent its residents from participating in commerce with those located in another State.

91. The Lockdown Orders impermissibly restrict Plaintiffs from exercising the right to engage in interstate commerce:

a. *LIFFT.* A portion of LIFFT's members' annual business involves customers who pay drop-in rates to workout at their fitness facilities. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facilities. The Lockdown Orders have prevented, and still prevent, LIFFT's members' from operating their facilities at all, including selling services to customers from out-of-state customers because the Lockdown Orders categorically prohibit LIFFT's members from operating their fitness facilities. LIFFT's members' have suffered a significant decrease in revenue and have lost business opportunities because of the Lockdown Orders.

b. *Baseline Fitness LLC.* A portion of Baseline Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Baseline Fitness from operating its facility at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Baseline Fitness' facility from operating. Baseline Fitness has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

c. *Building Your Temple LLC.* A portion of Building Your Temple's annual business involves customers who pay drop-in rates to workout at the fitness facility. This

may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Building Your Temple's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Building Your Temple's facility from operating. Building Your Temple has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

   d.    *BYT Fitness 247 LLC.* A portion of BYT Fitness 247's annual business involves customers who pay drop-in rates to workout at the fitness facility. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, BYT Fitness 247's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit BYT Fitness 247's facility from operating. BYT Fitness 247 has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

   e.    *Clawson Fitness.* A portion of Clawson Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Clawson Fitness' facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Clawson Fitness' facility from operating. Clawson Fitness has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

f.      *Clinton Fitness.* A portion of Clinton Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Clinton Fitness' facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Clinton Fitness' facility from operating.  Clinton Fitness has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

g.      *D-Lux Karate University.* A portion of D-Lux Karate University's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, D-Lux Karate University's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit D-Lux Karate University's facility from operating.  D-Lux Karate University has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

h.      *Fenton Athletic Club, Inc.* A portion of Fenton Athletic Club's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Fenton Athletic Club's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders

categorically prohibit Fenton Athletic Club's facility from operating.  Fenton Athletic Club has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

    i.  *Fenton Karate, LLC.* A portion of Fenton Karate's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Fenton Karate's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Fenton Karate's facility from operating.  Fenton Karate has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

    j.  *Fusion Fitness 24/7.* A portion of Fusion Fitness 24/7's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Fusion Fitness 24/7's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit Fusion Fitness 24/7's facility from operating.  Fusion Fitness 24/7 has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

    k.  *H3 Fitness LLC.* A portion of H3 Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, H3

Fitness' facility from operating at all, including selling services to customers from out-of-state customers because the Lockdown Orders categorically prohibit H3 Fitness from operating its facility.  H3 Fitness has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

        l.    *I Fitness Personal Training.* A portion of I Fitness Personal Training's annual business involves customers who pay drop-in rates to workout at the fitness facility. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, I Fitness Personal Training's facility from operating at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit I Fitness Personal Training from operating its facility.  I Fitness Personal Training has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

        m.    *JKP Fitness.* A portion of JKP Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, JKP Fitness' facility from operating at all, including selling services to customers from out-of-state customers because the Lockdown Orders categorically prohibit JKP Fitness from operating its facility.  JKP Enterprises has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

        n.    *JPF Enterprises.* A portion of JPF Enterprises' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include

guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, JPF Enterprises from operating its facility at all, including selling services to customers from out-of- state customers because the Lockdown Orders categorically prohibit JPF Enterprises' facility from operating. JPF Enterprises has suffered lost business opportunities because of the Lockdown Orders.

       o.    *M Fitness Club, LLC.* A portion of M Fitness Club's annual business involves customers who pay drop-in rates to workout at the fitness facilities. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facilities. The Lockdown Orders have prevented, and still prevent, M Fitness Club from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit M Fitness Club from operating its facilities. M Fitness Club has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

       p.    *MH & AB LLC.* A portion of MH & AB's annual business involves customers who pay drop-in rates to workout at the fitness facilities. This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facilities. The Lockdown Orders have prevented, and still prevent, MH & AB from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit MH & AB from operating its facilities. MH & AB has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

q.      *Motor City CF – St. Clair Shores, LLC*. A portion of Motor City CF-St. Clair Shores' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Motor City CF-St. Clair Shores from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit Motor City CF-St. Clair Shores from operating its facilities.  Motor City CF-St. Clair Shores has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

r.      *Nascot Enterprises*. A portion of Nascot Enterprises' annual business involves customers who pay drop-in rates to workout at the fitness facilities.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facilities. The Lockdown Orders have prevented, and still prevent, Nascot Enterprises from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit Nascot Enterprises from operating its facilities.  Nascot Enterprises has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

s.      *Prison City Physique*. A portion of Prison City Physique's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Prison City Physique from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders

categorically prohibit Prison City Physique from operating its facilities.  Prison City Physique has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

t.      *RMP Fitness*. A portion of RMP Fitness' annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, RMP Fitness from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit RMP Fitness from operating its facilities.  RMP Fitness has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

u.      *Strength Beyond LLC*. A portion of Strength Beyond's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, Strength Beyond from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit Strength Beyond from operating its facilities.  Strength Beyond has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

v.      *24/7 Fitness Bootcamp and Boxing, Inc*. A portion of 24/7 Fitness Bootcamp and Boxing's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility.

The Lockdown Orders have prevented, and still prevent, 24/7 Fitness Bootcamp and Boxing from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit it from operating its facilities.  24/7 Fitness Bootcamp and Boxing has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

      w.    *4 Seasons Gym*. A portion of 4 Seasons Gym's annual business involves customers who pay drop-in rates to workout at the fitness facility.  This may and does include guests from outside of Michigan who are in town vacationing or seeing family and friends who are members of the facility. The Lockdown Orders have prevented, and still prevent, 4 Seasons Gym from operating its facilities at all, including selling services to customers from out-of- state customers, because the Lockdown Orders categorically prohibit 4 Seasons Gym from operating its facilities.  4 Seasons Gym has suffered a decrease in revenue and has lost business opportunities because of the Lockdown Orders.

92.    Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

93.    Plaintiffs seek a declaration that the Lockdown Orders violate the Dormant Commerce Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

**COUNT II**
**PRIVILEGES AND IMMUNITIES CLAUSE**

94.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

95.     The Privileges and Immunities Clause of Article IV of the U.S. Constitution provides that "[t]he citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

96.     The Privileges and Immunities Clause protects a citizen's right to pursue a livelihood in a State other than the State in which he is a resident. *Baldwin* v. *Fish & Game Comm'n of Montana*, 436 U.S. 371 (1978).

97.     By June 1, fitness facilities in **forty-two** states have opened or will be open with restrictions: Alabama, Alaska, Arizona, Arkansas, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming. **Notably, gyms in Michigan's three bordering states of Indiana, Ohio and Wisconsin have also been opened**.

98.     The Lockdown Orders impermissibly restrict Plaintiffs from exercising their rights under the Privileges and Immunities Clause:

        a.     *LIFFT*. The Lockdown Orders have prevented, and continue to prevent, LIFFT's members from seeking clients located outside of Michigan. They also categorically prohibit LIFFT's members from opening their doors to keep people fit and health (mentally and physically), even though fitness facilities like LIFFT's members that are located in other States have been, and remain, free to do so.

b.      *Baseline Fitness LLC*. The Lockdown Orders have prevented, and continue to prevent, Baseline Fitness from seeking clients located outside of Michigan. They also categorically prohibit Baseline Fitness from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Baseline Fitness that are located in other States have been, and remain, free to do so.

c.      *Building Your Temple LLC*. The Lockdown Orders have prevented, and continue to prevent, Building Your Temple from seeking clients located outside of Michigan. They also categorically prohibit Building Your Temple from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Building Your Temple that are located in other States have been, and remain, free to do so.

d.      *BYT Fitness 247*. The Lockdown Orders have prevented, and continue to prevent, BYT Fitness 247 from seeking clients located outside of Michigan. They also categorically prohibit BYT Fitness 247 from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like BYT Fitness 247 that are located in other States have been, and remain, free to do so.

e.      *Clawson Fitness*. The Lockdown Orders have prevented, and continue to prevent, Clawson Fitness from seeking clients located outside of Michigan. They also categorically prohibit Clawson Fitness from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Clawson Fitness that are located in other States have been, and remain, free to do so.

f.      *Clinton Fitness*. The Lockdown Orders have prevented, and continue to prevent, Clinton Fitness from seeking clients located outside of Michigan. They also categorically prohibit Clinton Fitness from opening its doors to keep people fit and healthy

(mentally and physically), even though fitness facilities like Clinton Fitness that are located in other States have been, and remain, free to do so.

g. *D-Lux Karate University*. The Lockdown Orders have prevented, and continue to prevent, D-Lux Karate University from seeking clients located outside of Michigan. They also categorically prohibit D-Lux Karate University from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like D-Lux Karate University that are located in other States have been, and remain, free to do so.

h. *Fenton Athletic Club*. The Lockdown Orders have prevented, and continue to prevent, Fenton Athletic Club from seeking clients located outside of Michigan. They also categorically prohibit Fenton Athletic Club from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Fenton Athletic Club that are located in other States have been, and remain, free to do so.

i. *Fenton Karate*. The Lockdown Orders have prevented, and continue to prevent, Fenton Karate from seeking clients located outside of Michigan. They also categorically prohibit Fenton Karate from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Fenton Karate that are located in other States have been, and remain, free to do so.

j. *Fusion Fitness 24/7*. The Lockdown Orders have prevented, and continue to prevent, Fusion Fitness 24/7 from seeking clients located outside of Michigan. They also categorically prohibit Fusion Fitness 24/7 from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Fusion Fitness 24/7 that are located in other States have been, and remain, free to do so.

k.     *H3 Fitness LLC*. The Lockdown Orders have prevented, and continue to prevent, H3 Fitness from seeking clients located outside of Michigan. They also categorically prohibit H3 Fitness from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like H3 Fitness that are located in other States have been, and remain, free to do so.

l.     *I Fitness Personal Training.* The Lockdown Orders have prevented, and continue to prevent, I Fitness Personal Training from seeking clients located outside of Michigan. They also categorically prohibit I Fitness Personal Training from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like I Fitness Personal Training that are located in other States have been, and remain, free to do so.

m.     *JKP Fitness*. The Lockdown Orders have prevented, and continue to prevent, JKP Fitness from seeking clients located outside of Michigan. They also categorically prohibit JKP Fitness from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like JKP Fitness that are located in other States have been, and remain, free to do so.

n.     *JPF Enterprises*. The Lockdown Orders have prevented, and continue to prevent, JPF Enterprises from seeking clients located outside of Michigan. They also categorically prohibit JPF Enterprises from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like JPF Enterprises that are located in other States have been, and remain, free to do so.

o.     *M Fitness Club*. The Lockdown Orders have prevented, and continue to prevent, M Fitness Club from seeking clients located outside of Michigan. They also

categorically prohibit M Fitness Club from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like M Fitness Club that are located in other States have been, and remain, free to do so.

        p.      *MH & AB.* The Lockdown Orders have prevented, and continue to prevent, MH & AB from seeking clients located outside of Michigan. They also categorically prohibit MH & AB from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like MH & AB that are located in other States have been, and remain, free to do so.

        q.      *Motor City CF – St. Clair Shores*. The Lockdown Orders have prevented, and continue to prevent, Motor City CF – St. Clair Shores from seeking clients located outside of Michigan. They also categorically prohibit Motor City CF – St. Clair Shores from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Motor City CF – St. Clair Shores that are located in other States have been, and remain, free to do so.

        r.      *Nascot Enterprises.* The Lockdown Orders have prevented, and continue to prevent, Nascot Enterprises from seeking clients located outside of Michigan. They also categorically prohibit Nascot Enterprises from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Nascot Enterprises that are located in other States have been, and remain, free to do so.

        s.      *Prison City Physique.* The Lockdown Orders have prevented, and continue to prevent, Prison City Physique from seeking clients located outside of Michigan. They also categorically prohibit Prison City Physique from opening its doors to keep people

fit and healthy (mentally and physically), even though fitness facilities like Prison City Physique that are located in other States have been, and remain, free to do so.

t.   *RMP Fitness*. The Lockdown Orders have prevented, and continue to prevent, RMP Fitness from seeking clients located outside of Michigan. They also categorically prohibit RMP Fitness from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like RMP Fitness that are located in other States have been, and remain, free to do so.

u.   *Strength Beyond*. The Lockdown Orders have prevented, and continue to prevent, Strength Beyond from seeking clients located outside of Michigan. They also categorically prohibit Strength Beyond from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like Strength Beyond that are located in other States have been, and remain, free to do so.

v.   *24/7 Fitness Bootcamp and Boxing*. The Lockdown Orders have prevented, and continue to prevent, 24/7 Fitness Bootcamp and Boxing from seeking clients located outside of Michigan. They also categorically prohibit it from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like 24/7 Fitness Bootcamp and Boxing that are located in other States have been, and remain, free to do so.

w.   *4 Seasons Gym*. The Lockdown Orders have prevented, and continue to prevent, 4 Seasons Gym from seeking clients located outside of Michigan. They also categorically prohibit 4 Seasons Gym from opening its doors to keep people fit and healthy (mentally and physically), even though fitness facilities like 4 Seasons Gym that are located in other States have been, and remain, free to do so.

99.     Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

100.    Plaintiffs seek a declaration that the Lockdown Orders violate the Privileges and Immunities Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT III
## PRIVILEGES OR IMMUNITIES CLAUSE

101.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

102.    The Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution provides that "[n]o State [can] make or enforce any law [that] abridge[s] the privileges or immunities of citizens of the United States." U.S. Const. am. XIV, § 1, cl. 2.

103.    By June 1, fitness facilities in the following states have opened or will be open: Alabama, Alaska, Arizona, Arkansas, Delaware, Florida, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, North Carolina, North Dakota, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming. **Notably, gyms in Michigan's three bordering states of Indiana, Ohio and Wisconsin have also been opened**.

104.   The Lockdown Orders impermissibly restrict Plaintiffs from exercising these rights:

a.   *LIFFT*. The Lockdown Orders have prevented, and continue to prevent, LIFFT's members from seeking clients located inside and outside of Michigan. They also categorically prohibit LIFFT's members from opening their doors to keep people fit and health (mentally and physically), even though fitness facilities like their members that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

b.   *Baseline Fitness LLC*. The Lockdown Orders have prevented, and continue to prevent, Baseline Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit Baseline Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Baseline Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

c.   *Building Your Temple LLC*. The Lockdown Orders have prevented, and continue to prevent, Building Your Temple from seeking clients located inside and outside of Michigan. They also categorically prohibit Building Your Temple from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Building Your Temple that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

d.   *BYT Fitness 247 LLC*. The Lockdown Orders have prevented, and continue to prevent, BYT Fitness 247 from seeking clients located inside and outside of Michigan. They also categorically prohibit BYT Fitness 247 from opening its doors to keep

people fit and health (mentally and physically), even though fitness facilities like BYT Fitness 247 that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

e.     *Clawson Fitness*. The Lockdown Orders have prevented, and continue to prevent, Clawson Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit Clawson Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Clawson Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

f.     *Clinton Fitness*. The Lockdown Orders have prevented, and continue to prevent, Clinton Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit Clinton Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Clinton Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

g.     *D-Lux Karate University*. The Lockdown Orders have prevented, and continue to prevent, D-Lux Karate University from seeking clients located inside and outside of Michigan. They also categorically prohibit D-Lux Karate University from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like D-Lux Karate University that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

h.     *Fenton Athletic Club*. The Lockdown Orders have prevented, and continue to prevent, Fenton Athletic Club from seeking clients located inside and outside of

Michigan. They also categorically prohibit Fenton Athletic Club from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Fenton Athletic Club that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

i.    *Fenton Karate*. The Lockdown Orders have prevented, and continue to prevent, Fenton Karate from seeking clients located inside and outside of Michigan. They also categorically prohibit Fenton Karate from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Fenton Karate that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

j.    *Fusion Fitness 24/7*. The Lockdown Orders have prevented, and continue to prevent, Fusion Fitness 24/7 from seeking clients located inside and outside of Michigan. They also categorically prohibit Fusion Fitness 24/7 from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Fusion Fitness 24/7 that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

k.    *H3 Fitness LLC*. The Lockdown Orders have prevented, and continue to prevent, H3 Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit H3 Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like H3 Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

l.      *I Fitness Personal Training, Inc*. The Lockdown Orders have prevented, and continue to prevent, I Fitness Personal Training from seeking clients located inside and outside of Michigan. They also categorically prohibit I Fitness Personal Training from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like I Fitness Personal Training that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

m.      *JKP Fitness*. The Lockdown Orders have prevented, and continue to prevent, JKP Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit JKP Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like JKP Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

n.      *JPF Enterprises*. The Lockdown Orders have prevented, and continue to prevent, JPF Enterprises from seeking clients located inside and outside of Michigan. They also categorically prohibit JPF Enterprises from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like JPF Enterprises that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

o.      *M Fitness Club*. The Lockdown Orders have prevented, and continue to prevent, M Fitness Club from seeking clients located inside and outside of Michigan. They also categorically prohibit M Fitness Club from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like M Fitness Club that are

located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

p.      *MH & AB*. The Lockdown Orders have prevented, and continue to prevent, MH & AB from seeking clients located inside and outside of Michigan. They also categorically prohibit MH & AB from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like MH & AB that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

q.      *Motor City CF – St. Clair Shores*. The Lockdown Orders have prevented, and continue to prevent, Motor City CF – St. Clair Shores from seeking clients located inside and outside of Michigan. They also categorically prohibit Motor City CF – St. Clair Shores from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Motor City CF – St. Clair Shores that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

r.      *Nascot Enterprises.* The Lockdown Orders have prevented, and continue to prevent, Nascot Enterprises from seeking clients located inside and outside of Michigan. They also categorically prohibit Nascot Enterprises from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Nascot Enterprises that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

s.      *Prison City Physique.* The Lockdown Orders have prevented, and continue to prevent, Prison City Physique from seeking clients located inside and outside of

Michigan. They also categorically prohibit Prison City Physique from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Prison City Physique that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

t.   *RMP Fitness.* The Lockdown Orders have prevented, and continue to prevent, RMP Fitness from seeking clients located inside and outside of Michigan. They also categorically prohibit RMP Fitness from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like RMP Fitness that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

u.   *Strength Beyond.* The Lockdown Orders have prevented, and continue to prevent, Strength Beyond from seeking clients located inside and outside of Michigan. They also categorically prohibit Strength Beyond from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like Strength Beyond that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

v.   *24/7 Fitness Bootcamp and Boxing.* The Lockdown Orders have prevented, and continue to prevent, 24/7 Fitness Bootcamp and Boxing from seeking clients located inside and outside of Michigan. They also categorically prohibit it from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like 24/7 Fitness Bootcamp and Boxing that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

w.    *4 Seasons Gym.* The Lockdown Orders have prevented, and continue to prevent, 4 Seasons Gym from seeking clients located inside and outside of Michigan. They also categorically prohibit 4 Seasons Gym from opening its doors to keep people fit and health (mentally and physically), even though fitness facilities like 4 Seasons Gym that are located in other States have been, and remain, free to do so. In fact, fitness facilities in bordering states Indiana, Ohio and Wisconsin have been opened.

105.    Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

106.    Plaintiffs seek a declaration that the Lockdown Orders violate the Privileges or Immunities Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT IV PROCEDURAL DUE PROCESS

107.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

108.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

109.   The procedural component of the Due Process Clause prohibits government from depriving Plaintiffs of liberty and property interests without providing any process before or after the deprivations occurred.

110.   To establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights. See *Daily Servs., LLC* v. *Valentino*, 756 F.3d 893, 904 (CA6 2014).

111.   Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. *County of Sacramento* v. *Lewis*, 523 U.S. 833, 845 (1988).

112.   Liberty "denotes not merely freedom from bodily restraint ***but also the right of the individual to contract, to engage in any of the common occupations of life***, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, ***and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men***." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 572 (1972) (emphases added).

113.   Plaintiffs had protected liberty and property interests, which Defendants infringed through the Lockdown Orders:

a.   LIFFT's members have been, and are being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating fitness facilities for their members.

b.      Baseline Fitness LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

c.      Building Your Temple LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

d.      BYT Fitness 247 LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

e.      Clawson Fitness, LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

f.      Clinton Fitness, Inc. has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

g.      D-Lux Karate University, LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

h.      Fenton Athletic Club, Inc. has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

i.      Fenton Karate, LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

j.      Fusion Fitness 24/7 LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

k.      H3 Fitness LLC has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

l.      I Fitness Personal Training, Inc. has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

m.      JKP Fitness has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

n.      JPF Enterprises has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

o.      M Fitness Club has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

p.      MH & AB has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

q.      Motor City CF – St. Clair Shores has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

r.      Nascot Enterprises has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

s.      Prison City Physique has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

t.      RMP Fitness has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

u.      Strength Beyond has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

v.      24/7 Fitness Bootcamp and Boxing has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

w.      4 Seasons Gym has been, and is being, denied the right to intrastate travel and the right to engage in commerce, to-wit: operating a fitness studio for its members.

114.    Neither Governor Whitmer nor Director Gordon provided any procedural due process before issuing the Lockdown Orders. Nor do the Lockdown Orders provide any mechanism for post-deprivation review.

115.    Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

116.    As a direct and proximate cause of the failure to provide any pre- or post-deprivation process, Plaintiffs suffered prejudice under threat of criminal and civil sanctions.

117.    These orders and rules acknowledge that so-called "critical" businesses and those "noncritical" can safely operate by adhering to "social distancing" rules delineated in

Section 11 of EO 2020-59, including the arbitrary "enhanced social distancing" rules that apply only to the "noncritical" businesses allowed to resume operations.

118.    Plaintiffs can operate in full compliance with all of these rules.

119.    By failing to provide any pre- or post-deprivation review of the orders and rules shuttering their businesses, Plaintiffs are suffering substantial losses of liberty and property:

a.    *LIFFT*.  LIFFT's members have lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. LIFFT's members will continue to experience financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders, due to individuals cancelling memberships at LIFFT's members' fitness facilities that would not otherwise have done so, as well as lost business opportunities for new members.

b.    *Baseline Fitness LLC.*  Baseline Fitness LLC has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Baseline Fitness LLC will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

c.    *Building Your Temple LLC.*  Building Your Temple LLC has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Building Your Temple will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

d.      *BYT Fitness 247 LLC.*  BYT Fitness 247 has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. BYT Fitness 247 will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

e.      *Clawson Fitness, LLC.*  Clawson Fitness has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Clawson Fitness will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

f.      *Clinton Fitness, Inc.*  Clinton Fitness has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Clinton Fitness will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

g.      *D-Lux Karate University, LLC.*  D-Lux Karate University has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. D-Lux Karate University will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

h.      *Fenton Athletic Club, Inc.*  Fenton Athletic Club has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Fenton Athletic

Club will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

       i.    *Fenton Karate, LLC.*  Fenton Karate has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Fenton Karate will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

       j.    *Fusion Fitness 24/7 LLC.*  Fusion Fitness 24/7 LLC has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Fusion Fitness 24/7 will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

       k.    *H3 Fitness LLC.*  H3 Fitness has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. H3 Fitness will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

       l.    *I Fitness Personal Training.*  I Fitness Personal Training has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. I Fitness Personal Training will continue to experience significant financial losses in the

second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

m.      *JKP Fitness*. JKP Fitness has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. JKP Fitness will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

n.      *JPF Enterprises*. JPF Enterprises has lost membership revenue over the eleven weeks since the Lockdown Orders went into effect. JPF Enterprises will continue to experience significant financial losses in the second quarter of 2020 and beyond, as well as lost business opportunities for new members.

o.      *M Fitness Club.*  M Fitness Club has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. M Fitness Club will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

p.      *MH & AB.*  MH & AB has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. MH & AB will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

q.      *Motor City CF – St. Clair Shores.*   Motor City CF – St. Clair Shores has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Motor City CF – St. Clair Shores will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

r.      *Nascot Enterprises.*   Nascot Enterprises has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Nascot Enterprises will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

s.      *Prison City Physique.*   Prison City Physique has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Prison City Physique will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

t.      *RMP Fitness.*   RMP Fitness has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. RMP Fitness will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

u.      *Strength Beyond.*   Strength Beyond has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. Strength Beyond will continue to

experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

v.      *24/7 Fitness Bootcamp and Boxing.*  24/7 Fitness Bootcamp and Boxing has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. 24/7 Fitness Bootcamp and Boxing will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

w.      *4 Seasons Gym.*  4 Seasons Gym has lost significant revenue over the eleven weeks since the Lockdown Orders went into effect. 4 Seasons Gym will continue to experience significant financial losses in the second quarter of 2020 and beyond because of the Lockdown Orders due to its members cancelling memberships that would not otherwise have done so, as well as lost business opportunities for new members.

120.    The prejudice each Plaintiff has suffered would not have occurred but for Defendants' deprivations of their liberty and property interests.

121.    Plaintiffs seek a declaration that the Lockdown Orders violate the procedural component of the Due Process Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT V
## SUBSTANTIVE DUE PROCESSS

122.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

123.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

124.    The substantive component of the Due Process Clause prohibits government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (cleaned up).

125.    Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. County of Sacramento v. Lewis, 523 U.S. 833, 845 (1988).

126.    Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 572 (1972) (emphases added).

127.    The Lockdown Orders shock the conscience and interfere with Plaintiffs' deeply-rooted liberty and property rights, including the to work, right to contract, and right to engage in commerce, for all of the reasons described in the General Allegations and in each of the Counts of this Complaint, which are incorporated into this Paragraph by reference.

128.     Each Plaintiff could and can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the Lockdown Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the Lockdown Orders are not narrowly tailored to achieve a compelling governmental interest.

129.     Nor is there any rational basis to deprive Plaintiffs of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate (such as manufacturing, restaurants, bars, and retail).

130.     In the alternative, the Lockdown Orders are not reasonably related to a legitimate governmental interest.

131.     Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

132.     Plaintiffs seek a declaration that the Lockdown Orders violate the substantive component of the Due Process Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

**COUNT V**
**EQUAL PROTECTION**

133.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

134.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4.

135.    The Lockdown Orders deprive Plaintiffs of the equal protection of the law because they allow some businesses to operate but not Plaintiffs' businesses, even though they are similarly situated.

136.    For example, under EO 2020-96, dentists are now allowed to provide all services safely statewide, according to the Governor, even though the patients cannot wear masks during dental procedures or routine cleanings, and employees will necessarily stand within inches to two feet from their patients' mouths.  The designation that dentists can safely perform routine cleanings and fittings for bite guards is completely arbitrary, considering that other industries that can maintain strict social distancing are not allowed to re-open and in fact can be criminalized for doing so.

137.    Each Plaintiff could and can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the Lockdown Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the Lockdown Orders are not narrowly tailored to achieve a compelling governmental interest.

138.    Nor is there any rational basis to deprive Plaintiffs of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate.

139.    In the alternative, the Lockdown Orders are not reasonably related to a legitimate governmental interest.

140.    Governor Whitmer and Director Gordon acted under color of State law in an official capacity and within the scope of their official duties when issuing the Lockdown Orders.

141.    Plaintiffs seek a declaration that the Lockdown Orders violate the Equal Protection Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT VI
## DECLARATORY JUDGMENT VOID FOR VAGUENESS

142.     There is an actual and present controversy between the parties.

143.    Plaintiffs contend that the Lockdown Orders are unconstitutionally vague under the void-for-vagueness doctrine under the U.S. and Michigan constitutions.

144.    The void-for-vagueness doctrine requires penal laws to define criminal conduct with sufficient precision that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender* v. *Lawson*, 461 U.S. 352, 357–358 (1983). This doctrine flows from the Due Process Clause. *Michigan Dep't of State Compliance & Rules Div.* v. *Michigan Educ. Ass'n*, 251 Mich. App. 110, 116 (2002); U.S Const., am. XIV; Mich. Const. (1963), art. I, § 17.

145.    The Lockdown Orders purport to carry the force of law and (with the exception of Director Gordon's Emergency Rule) makes any willful violation of their terms a misdemeanor punishable by imprisonment or a fine. It is therefore subject to the void-for-vagueness doctrine.

146.    EO 2020-42 through EO 2020-96 allow certain businesses to continue operations if they fall within certain "sectors" of the economy, but it does not identify any criteria by which a business owner can safely determine whether his or her business falls within that sector. Incongruities are evident within the order.

147.    The very fact that the Governor needs a webpage to answer "frequently asked questions" about the scope of the order shows that it's vague. Michiganders are smart people. If "ordinary people" could understand the Lockdown Order, then there would be no need for **969 FAQs** on these orders on the State's coronavirus webpage. The orders are also constantly being "clarified" in news articles, press conferences, and revised orders. Still, pervasive confusion remains each time a new order is released.

148.    On information and belief, Governor Whitmer and Director Gordon deny these contentions.

149.    Plaintiffs seek a judicial declaration that the Lockdown Orders are void for vagueness, and an injunction against enforcement or adoption of these and similar orders and rules in the future as described in the Prayer for Relief.

## COUNT VII
## DECLARATORY JUDGMENT SEPARATION OF POWERS

150.    There is an actual and present controversy between the parties.

151.    Plaintiffs contend that EO 2020-43 through EO 2020-96 (and their predecessors) related to the closure of Plaintiffs' businesses violate the Separation of Powers Clause in Article III, Section 2 of the Michigan Constitution of 1963, and that the EOs prohibit them—directly through the executive order itself and indirectly through Director Gordon's

Emergency Order and Emergency Rule—from engaging activities in which they would otherwise be free to engage under threat of criminal sanction.

152.    The Separation of Powers Clause provides that "[t]he powers of government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Mich. Const. (1963) art. III, § 2.

153.    The Emergency Powers Act violates the Separation of Powers Clause because it vests governors with total legislative power whenever a governor asserts the existence of an emergency.

154.    The Emergency Management Act does not violate the Separation of Powers Clause on its face, but it does as Governor Whitmer has applied it. As the Governor appears to construe it, the Emergency Management Act gives her limitless powers equal in scope to the Emergency Powers Act. The language of the Act does not confer such unlimited powers on the Governor.

155.    On information and belief, Governor Whitmer and Director Gordon deny these contentions.

156.    Plaintiffs seek a judicial declaration that the Lockdown Orders violate the Separation of Powers Clause, and an injunction against enforcement or adoption of these and similar orders and rules in the future as described in the Prayer for Relief.

**COUNT VIII**
**DECLARATORY JUDGMENT**
**UNLAWFUL EXERCISE OF EMERGENCY POWERS ACT**

157.    There is an actual and present controversy between the parties.

158.    Plaintiffs contend that EO 2020-43 and EO 2020-96 (and their predecessors and subsequent EOs) violate the Emergency Powers Act, if they pass constitutional muster.

159.    Viruses, like SARS-CoV-2, and the diseases they can cause, like COVID-19, are not the kind of emergencies contemplated under the Emergency Powers Act, which applies "[d]uring times of great public crisis, disaster, rioting, catastrophe, or similar public emergency within the state, or reasonable apprehension of immediate danger of a public emergency of that kind, ***when public safety is imperiled***...." Mich. Comp. Laws § 10.31.

160.    Public health and public safety are distinct legal concepts. Governor Whitmer has not identified a public ***safety*** emergency in any of the EOs. Instead, she has only selectively quoted from the portion of the Act that allows her to issue orders necessary to protect life or property or to bring the emergency under control. EO 2020-42, Preamble ¶ 4. Absent a public ***safety*** emergency, the Governor has no power to issue orders under the Emergency Powers Act at all. Neither SARS-CoV-2 nor COVID-19 have presented a public safety emergency.

161.    Alternatively, even if SARS-CoV-2 or COVID-19 qualify as a public safety emergency, the Emergency Powers Act does not authorize the *de facto* statewide house arrest imposed under the EOs. The Act says a governor may "designat[e] ***specific zones*** within the area in which occupancy and use of buildings and ingress and egress of persons and vehicles may be prohibited or regulated." Mich. Comp. Laws § 10.31(1). Governor Whitmer, however, has regulated occupancy and use of buildings statewide. The EOs violate the Act because it is not limited to specific zones within Michigan.

162.    Alternatively, the Emergency Powers Act only authorizes a governor to issue *reasonable* orders that are considered necessary to protect life or property or to bring the emergency under control. Mich. Comp. Laws § 10.31(1).

163.    The EOs are objectively unreasonable. There can be nothing more unreasonable than keeping 10 million people under house arrest because 0.38% of the population has contracted a disease that has killed less than 0.03% of the population.

164.    Likewise, it is unreasonable to cause nearly 1.2 million men and women to lose their jobs virtually overnight, or to cripple businesses, or to cause businesses to permanently close on those same facts, especially when many of these people reside in counties with less than 25 cases and far fewer (or even no) deaths.

165.    Michigan has 83 counties. As of May 16, 2020, three counties in Michigan still had no confirmed cases, and 32 counties had fewer than 25 cases. As of that same date, 21 counties had no deaths, and 57 counties had less than 10 deaths.

166.    Similarly, it is unreasonable to maintain these EOs when the policies contained within them have plunged the State into Depression-level unemployment.

167.    On information and belief, Governor Whitmer and Director Gordon deny these contentions.

168.    Plaintiffs seek a judicial declaration that the Eos violate the Emergency Powers Act, an injunction against enforcement of the Lockdown Orders, and an injunction against similar orders and rules in the future as described in the Prayer for Relief.

**COUNT IX**
**DECLARATORY JUDGMENT**
**UNLAWFUL EXERCISE OF EMERGENCY MANAGEMENT ACT**

169.    There is an actual and present controversy between the parties.

170.    Plaintiffs contend that EO 2020-43 and EO 2020-96 (and their predecessors and subsequent EOs) violate the Emergency Management Act, if they pass constitutional muster.

171.    The Emergency Management Act permits a governor to declare a disaster in response to the occurrence of threat of widespread loss of life resulting from natural causes, including an epidemic. See Mich. Comp. Laws § 30.402(e) (including epidemics in the list of causes of disasters). Thus, infectious diseases by themselves are not a permissible reason to invoke the Act—the disease must reach or threaten to reach epidemic status.

172.    Although the World Health Organization has classified SARS-CoV-2 as a pandemic, that is not controlling under Michigan law. The existence of an epidemic must be determined solely from the perspective of the facts as they exist on the ground *in Michigan*.

173.    With confirmed infections affecting only 0.38% of the State as of the date of this Complaint, no epidemic actually exists throughout all of Michigan. While a regional epidemic *likely* exists in a few densely populated areas, one does not exist in all 83 counties in Michigan, as demonstrated by persistently low numbers of infections and deaths in the majority of Michigan's counties.

174.    In addition, the Emergency Management Act does not contemplate declaring the entire State a disaster area. Among other things, the Act allows a governor to issue orders affecting a "stricken" or "threatened" area, including mandatory evacuation orders, controlling ingress and egress from that area, and the occupancy of premises within that area. Mich. Comp. Laws § 30.405(1)(e)–(g).

175.    Moreover, even when grounds exist to declare a disaster, the executive order must indicate, among other things, the nature of the conditions permitting the termination

of the state of disaster. Mich. Comp. Laws § 30.403(3). None of Governor Whitmer's executive orders have articulated objective conditions that, when satisfied, would permit the termination of the state of disaster.

176.    On information and belief, Governor Whitmer and Director Gordon deny these contentions.

177.    Plaintiffs seek a judicial declaration that the EOs violate the Emergency Management Act, an injunction against enforcement the Lockdown Orders, and an injunction against similar orders and rules in the future as described in the Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask the Court to grant them the following relief:

a.    A declaratory judgment that the Lockdown Orders:

b.    violate Plaintiffs' constitutional rights as set forth in this Complaint;

c.    are void for vagueness; and/or

d.    violate the Separation of Powers Clause of the Michigan Constitution, the Emergency Powers Act, and/or the Emergency Management Act;

e.    Enjoin Governor Whitmer and Director Gordon from enforcing the Lockdown Orders and from issuing any future orders or rules similar to the invalid ones described in this action;

f.    Award Plaintiffs their reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988 and any other applicable law; and

g.    Any other such further relief to which Plaintiffs may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

**JURY DEMAND**

Under the Seventh Amendment to the U.S Constitution and Rule 38(b) of the Federal

Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.


Dated: June 1, 2020                          Respectfully submitted,


/s/ Scott M. Erskine
SCOTT M. ERSKINE (P54714)
CARLY VAN THOMME (P59706)
ERSKINE LAW, PC
Attorneys for Plaintiffs
612 West University Drive
Rochester, Michigan 48307
(248) 601-4497
serskine@erskinelaw.com