UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF INDEPENDENT
FITNESS FACILITIES AND
TRAINERS, INC., BASELINE
FITNESS LLC, BUILDING
YOUR TEMPLE LLC,                              No. 20-cv-00458
BYT FITNESS 247 LLC,
CLAWSON FITNESS, LLC,                         HON. PAUL L. MALONEY
CLINTON FITNESS, INC.,
D-LUX KARATE UNIVERSITY,
LLC, FENTON ATHLETIC CLUB,                    **DEFENDANTS' BRIEF**
INC., FENTON KARATE, LLC,                     **IN SUPPORT OF**
FUSION FITNESS 24/7 LLC,                      **EMERGENCY MOTION**
H3 FITNESS LLC, I FITNESS                     **TO STAY**
PERSONAL TRAINING, INC.,
JKP FITNESS, LLC, JPF
ENTERPRISES, LLC, M FITNESS                   **\*\*\*IMMEDIATE**
CLUB, LLC, MH & AB LLC,                       **CONSIDERATION**
MOTOR CITY CF – ST. CLAIR                     **REQUESTED\*\*\***
SHORES, LLC, NASCOT
ENTERPRISES, LLC, PRISON CITY
PHYSIQUE, LLC, FMP FITNESS INC.,
STRENGTH BEYOND LLC, 24/7
BOOTCAMP AND BOXING, INC., and
4 SEASONS GYM, LLC,

     Plaintiffs,

v

GRETCHEN E. WHITMER and
ROBERT E. GORDON,

     Defendants.

---

Scott M. Erskine (P54734)          John G. Fedynsky (P65232)
Carly Van Thomme (P59706)          Andrew J. Jurgensen (P81123)
Erskine Law, P.C.                  Joseph T. Froehlich (P71887)
Attorneys for Plaintiffs           Joshua O. Booth (P53847)
612 W. University                  Christopher M. Allen (P75329)
Rochester, MI 48307                 Assistant Attorneys General

(248) 601-4499
serskine@erskinelaw.com
cvanthomme@erskinelaw.com

Attorneys for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
jurgensena2@michigan.gov
froehlichj1@michigan.gov
boothj2@michigan.gov
allenc28@michigan.gov

**DEFENDANTS WHITMER AND GORDON'S
BRIEF IN SUPPORT OF EMERGENCY MOTION TO STAY[1]**

John G. Fedynsky (P65232)
Andrew J. Jurgensen (P81123)
Joseph T. Froehlich (P71887)
Joshua O. Booth (P53847)
Christopher M. Allen (P75329)
Assistant Attorneys General
Attorneys for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
jurgensena2@michigan.gov
froehlichj1@michigan.gov
boothj2@michigan.gov
allenc28@michigan.gov

Dated:  June 19, 2020

---

[1] Concurrence in the relief request was sought but denied.

# TABLE OF CONTENTS

_Page_

Table of Contents..................................................................................................i

Index of Authorities............................................................................................ii

Concise Statement of Issue Presented.............................................................v

Controlling or Most Appropriate Authority..................................................vi

Introduction...........................................................................................................1

Statement of Facts................................................................................................2

Standard of Review..............................................................................................2

Argument.................................................................................................................3

I.      Rather than preserve the status quo, the preliminary injunction
        fundamentally alters it......................................................................3

II.     The preliminary injunction implicates substantial separation of powers
        concerns................................................................................................4

III.    The Court should not have applied a heightened standard for rational
        basis review..........................................................................................5

IV.     The Court did not provide due deference under _Jacobson v._
        _Commonwealth of Massachusetts._..................................................8

V.      Denial of a stay would irreparably harm Defendants and not serve the
        public interest....................................................................................10

VI.     Grant of a stay would not substantially harm interested parties...............11

Conclusion and Relief Requested...................................................................12

i

# INDEX OF AUTHORITIES

Page

**Cases**

*Adams & Boyle, P.C. v. Slatery*,
   956 F.3d 913 (6th Cir. 2020) ...................................................................................... 9

*Amato v. Elicker*,
   No. 3:20-CV-464 (MPS), 2020 WL 2542788 (D. Conn. May 19, 2020) ..................... 9

*Baker v. Adams County / Ohio Valley Sch. Bd.*,
   310 F.3d 927 (6th Cir. 2002) ................................................................................ vi, 3

*Compagnie Francaise de Navigation a Vapeur v. La State Bd of Health*,
   186 U.S. 380 (1902) .................................................................................................... 8

*Cross Culture Christian Center v. Newsom*,
   2020 WL 2121111 (E.D. Cal., May 5, 2020) .............................................................. 9

*Garcia v. San Antonio Metropolitan Transit Authority*,
   469 U.S. 528 (1985) .................................................................................................... 5

*Geller v. de Blasio*,
   No. 20CV3566 (DLC), 2020 WL 2520711 (S.D.N.Y. May 18, 2020) ......................... 9

*Gish v. Newsom*,
   2020 WL 1979970 (C.D. Cal. April 23, 2020) ........................................................... 9

*Givens v. Newsom*,
   2020 WL 2307224 (E.D. Cal., May 8, 2020) .............................................................. 9

*Hall v. Edgewood Partners*,
   878 F.3d 524 (6th Cir. 2017) ..................................................................................... 4

*Hartman v. Acton*,
   No. 2:20-CV-1952, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020) ............................ 9

*In re Abbott*,
   954 F.3d 772 (5th Cir., April 7, 2020) ...................................................................... 8

*In re Rutledge*,
   956 F.3d 1018 (8th Cir., April 22, 2020) .................................................................. 9

*Jacobson v. Commonwealth of Massachusetts,*
  197 U.S. 11 (1905) ........................................................................................ 1, 4, 8

*Kansas v Hendricks,*
  521 U.S. 346 (1997) ................................................................................................ 8

*Lawrence v. Colorado,*
  No. 120CV00862DDDSKC, 2020 WL 2737811 (D. Colo. Apr. 19, 2020) ................. 9

*Legacy Church, Inc. v. Kunkel,*
  2020 WL 1905586 (D. N.M. April 17, 2020) ........................................................... 9

*Lighthouse Fellowship Church v. Northam,*
  2020 WL 2110416 (E.D. Va., May 1, 2020) ............................................................ 9

*Marshall v. United States,*
  414 U.S. 417 (1974) ................................................................................................ 5

*Maryland v. King,*
  133 S. Ct. 1 (2012) ............................................................................................... 10

*Maryville Baptist Church, Inc. v. Beshear,*
  957 F.3d 610 (6th Cir. 2020) ................................................................................. 9

*McGhee v. City of Flagstaff,*
  2020 WL 2308479 (D. Ariz., May 8, 2020) ............................................................ 9

*McNeilly v. Land,*
  684 F.3d 611 (6th Cir. 2012) ................................................................................. 3

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) ........................................................................................... 10

*Open Our Oregon v. Brown,*
  No. 6:20-CV-773-MC, 2020 WL 2542861 (D. Or. May 19, 2020) ............................ 9

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
  734 F.3d 406 (5th Cir. 2013) ............................................................................... 10

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ................................................................................................ 8

*Roberts v. Neace,*
  958 F.3d 409 (6th Cir. 2020) ................................................................................. 9

*Robinson v. Attorney General,*
  957 F.3d 1171 (11th Cir. April 23, 2020) ............................................................... 9

*SH3 Health Consulting, LLC v. St. Louis County Exec.*,
  2020 WL 2308444 (E.D. Mo., May 8, 2020) ............................................................ 9

*Shows v. Curtis*,
  2020 WL 1953621 (W.D. N.C., April 23, 2020) ...................................................... 9

*South Bay United Pentecostal Church v. Gavin Newsom, Governor of
  California*,
  509 U.S. ___ (2020) ........................................................................................... 1, 4

*Williamson v. Lee Optical of Oklahoma Inc.*,
  348 U.S. 483 (1955) .............................................................................................. 6

## Rules

Fed. R. Civ. P. 10(c) .................................................................................................. 2

Fed. R. Civ. P. 62(c) .................................................................................................. 2

Fed. R. Civ. P. 65 (d)(1) ........................................................................................... vi

Fed. R. Civ. P. 65(c) ................................................................................................. vi

## CONCISE STATEMENT OF ISSUE PRESENTED

1.    Should the Court immediately enter an order staying its preliminary injunction pending appeal?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

Fed. R. Civ. P. 65 (d)(1) Contents:  Every order granting an injunction and every restraining order must . . . (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

Fed. R. Civ. P. 65(c) Security:  The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.[2]

Stay of Injunction:  In determining whether a stay should be issued pending appeal, this Court balances the traditional factors governing injunctive relief: (1) Whether the moving party has a strong or substantial likelihood of success on the merits; (2) Whether the moving party will suffer irreparable harm if the district court proceedings are not stayed; (3) Whether staying the district court proceedings will substantially injure other interested parties; and (4) Where the public interest lies. *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

---

[2] It should be noted that the Court's order did not address this required part of Rule 65.

## INTRODUCTION

The Court's injunction should be immediately stayed pending appeal for several reasons.

First, rather than preserve the status quo, the preliminary injunction fundamentally alters the status quo. It imposes substantive restrictions on core public health authority in an ongoing pandemic, contrary to all prior challenges brought in Michigan's state and federal courts.

Second, it implicates fundamental concerns about separation of powers. *See South Bay United Pentecostal Church v. Gavin Newsom, Governor of California*, 509 U.S. ___ (2020) slip op., p. 2 (summary order released May 29, 2020) (Roberts, C.J., concurring)

Third, it is premised on a heightened form of rational basis review that is not rooted in the law. The idea that gyms – with their high levels of heavy respiratory activity, shared indoor spaces, and shared surfaces – might be one of the later businesses to come back online in the midst of this global pandemic is hardly surprising and highly sensible.

Fourth, and similarly, it failed to apply due deference under the settled law of *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 27 (1905).

Fifth, if not stayed pending appeal it will present irreparable harm to Defendants and not serve the public interest. It introduces the likelihood of an unworkable patchwork of judicial and regional carveouts to a general public health response to a pandemic involving a novel virus, which will likely lead to unintended

consequences and erosion of the common plan to fight the spread of the virus,

creating the substantial risk of a second wave.

Sixth, a stay will not substantially injure other interested parties.

## STATEMENT OF FACTS

Defendants rely upon and adopt and incorporate by reference the factual

recitations and exhibits presented in their response to Plaintiffs' motion for

preliminary injunction (R. 35 through 35–13).  Fed. R. Civ. P. 10(c).

On June 17, 2020, the Court heard argument on Plaintiff's emergency motion

for preliminary injunction.  No witnesses were presented.  On June 19, 2020, the

Court granted the motion and issued an injunction with the following operative

language:

> **IT IS HEREBY ORDERED that as of 12:01 a.m. on Thursday,**
> **June 25, 2020, Defendants are enjoined from enforcing ¶ 12(b)**
> **of Executive Order 2020-110.**

On June 19, 2020, Defendants filed a notice of appeal.  On June 22, 2020, they

brought the instant motion for an immediate stay pending appeal.  While the

effective date of the injunction provides a temporary stay, Defendants bring this

motion in the first instance in the district court because a longer stay during the

pendency of the appeal is required.

## STANDARD OF REVIEW

This Court may stay an injunction pending an appeal.  Fed. R. Civ. P. 62(c).

In determining whether a stay should be issued pending appeal, this Court balances

2

the traditional factors governing injunctive relief: (1) Whether the moving party has a strong or substantial likelihood of success on the merits; (2) Whether the moving party will suffer irreparable harm if the district court proceedings are not stayed; (3) Whether staying the district court proceedings will substantially injure other interested parties; and (4) Where the public interest lies. *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). The factors are to be balanced, and the "strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue." *Id.*

## ARGUMENT

The preliminary injunction is a bridge too far. It has wide-ranging implications for future cases and for the state's public health authority to respond to an unpredictable, ongoing health crisis. However the appeal process is resolved, this case merits an immediate stay pending appeal. The last thing that anyone wishes to see is a second wave of the pandemic that may require a return of limitations that have already been relaxed. The success of the Governor's efforts have placed Michigan in a small category of states in which the pandemic is significantly receding, and this ruling creates the risk of reversing this trend.

**I.    Rather than preserve the status quo, the preliminary injunction fundamentally alters it.**

A preliminary injunction is "an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). It is "reserved only for cases where it is necessary

3

to preserve the status quo until trial." *Hall v. Edgewood Partners*, 878 F.3d 524, 526 (6th Cir. 2017).  Here, the Court has not entered an order that preserves the status quo.  This is not a case that asked to halt the removal of a tree or the demolition of a building – classic examples of irreversible irreparable harm amenable to temporarily enjoin.  Rather, Plaintiffs' motion was a trojan horse seeking ultimate relief, which the Court has now granted in toto.  For that reason alone, a stay pending the appeal is appropriate.  In this circumstance, a stay would serve the salutary function of preserving the status quo while important and perhaps dispositive legal issues are decided with finality on appeal.

## II.    The preliminary injunction implicates substantial separation of powers concerns.

Recently, the U.S. Supreme Court refused to grant injunctive relief for a party challenging under the First Amendment a California executive order that created limitations on public gatherings, including those of public worship, based on considerations of health and safety.  *South Bay United Pentecostal Church, et al. v. Gavin Newsom, Governor of California*, 509 U.S. ___ (2020) (summary order released May 29, 2020).  In his opinion concurring in the denial of relief, Chief Justice Roberts expressly relied on *Jacobson* in explaining that the Constitution "principally entrusts" these questions of safety to "the politically accountable officials of the States."  *Id.* at slip op., p. 2 (citing *Jacobson*, 197 U.S. at 38).

Notably, as here, when those officials act "in areas fraught with medical and scientific uncertainties," Chief Justice Roberts explained that "their latitude 'must

be especially broad.' " *Id.* (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). And when operating within those broad limits, he explained, these officials "should not be subject to second-guessing" by the federal judiciary, which lacks comparable expertise in public health. *Id.* (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985).)

The Court's opinion cites this authority yet fails to follow it. Had it applied this binding authority, the Court would not have failed to discern any conceivable rational basis for the restrictions on indoor fitness activity. The Court's analysis glosses over the undisputed nature of the virus and how it spreads through respiratory droplets, as well as the reasons offered for why indoor fitness facilities present a particularly heightened risk of that spread. It also mentions the preambles to the executive orders but fails to engage them and the fertile ground they provide for rational bases for the challenged restrictions. In short, the injunction order runs counter to the guidance already provided in this emergent field of law by our highest court. Accordingly, a stay is appropriate under these circumstances.

### III.   The Court should not have applied a heightened standard for rational basis review.

Because no fundamental constitutional rights are implicated here, straightforward rational basis review should apply. Indoor commercial fitness activity – like myriad other segments of the economy – is left under longstanding precedent to the social policy discretion of state and local non-judicial authority.

5

Cases about deference to legislative classification apply with equal force to the
executive order classifications challenged here.  In a seminal case upholding
differential regulation of optometrists and opticians, the Supreme Court declined to
draw a different line.

> The problem of legislative classification is a perennial one, admitting of
> no doctrinaire definition.  Evils in the same field may be of different
> dimensions and proportions, requiring different remedies.  Or so the
> legislature may think.  *Tigner v. State of Texas*, 310 U.S. 141, 60 S.Ct.
> 879, 84 L.Ed. 1124. Or the reform may take one step at a time,
> addressing itself to the phase of the problem which seems most acute
> to the legislative mind.  *Semler v. Oregon State Board of Dental
> Examiners*, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature
> may select one phase of one field and apply a remedy there, neglecting
> the others.  [*Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483,
> 489 (1955)]

Under this law, upholding the line drawn is as important and upholding who
gets to draw the line.  Accordingly, federal courts are not the one to decide.  Nor are
they required to embark on fact-finding inquiries aimed at examining the science or
data that may or may not support any particular classification.

> In areas of social and economic policy, a statutory classification that
> neither proceeds along suspect lines nor infringes fundamental
> constitutional rights must be upheld against equal protection
> challenge if there is any reasonably conceivable state of facts that
> could provide a rational basis for the classification.  *F.C.C. v. Beach
> Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).
>
> ***
>
> [B]ecause we never require a legislature to articulate *its* reasons for
> enacting a statute, it is entirely irrelevant for constitutional purposes
> whether the conceived reason for the challenged distinction actually
> motivated the legislature . . . . *Id.* at 315.
>
> ***

6

> [A] legislative choice is not subject to courtroom fact-finding and may
> be based on rational speculation unsupported by evidence or empirical
> data. *Id*. at 315.

In this case, the Court went beyond simple rational basis review, which plainly
would have turned away Plaintiffs' challenge.  Rather, the Court's opinion suggests
something more is required than a conceivable rational basis for the challenged
classification.

Contrary to the law, the Court searched the record for a basis to uphold the
restrictions, in spite of binding law stating that such judicial fact-finding is neither
required nor desirable.  Additionally, the Court's order simplifies Defendants'
arguments at the hearing as boiling down to a "trust us" position – which is not the
legal position Defendants took at the hearing or in writing.

A bit of procedural history is relevant here.  Plaintiffs filed their motion for a
preliminary injunction on Monday, June 8, 2020.  On the next day, the Court
entered an order requiring a response by noon on Friday, June 12, 2020.
Defendants provided this response, explaining the legal authority controlling
Plaintiffs' request and documenting the rationale for the restrictions Plaintiffs
challenged.  Then the hearing came three business days later, followed by an
injunction this Friday.  From that ruling, it seems the Court, on that timeline,
expected some further showing of facts, data, science, or whatever other parol
evidence – all for discrete legal questions that under the law of rational basis review
have never required such a defense.  Respectfully, the pace and manner of judicial
process and outcome here do not add up to the kind of deference that under settled

law applies to these types of challenges – with or without an unpredictable

pandemic at hand.

## IV.    The Court did not provide due deference under *Jacobson v. Commonwealth of Massachusetts.*

Faced with "great danger[ ]," state actors are permitted great latitude to

secure the public health.  *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11,

29 (1905).  And in this time of crisis, securing the public health requires temporary

sacrifices by each of us:  "Real liberty for all could not exist under the operation of a

principle which recognizes the right of each individual person to use his own,

whether in respect of his person or his property, regardless of the injury that may

be done to others."  *Id*. at 26.

Under *Jacobson*, judicial review of the executive orders is "only" available if

the challenged action "has *no real or substantial relation to those objects* [of securing

public health and safety], or is, *beyond all question, a plain, palpable invasion of

rights secured by the fundamental law*."  *Id.* at 31 (emphasis added).  This standard

has been broadly applied, even well after *Jacobson* was decided, which

demonstrates that its core holding should control here as well.  *See*, *e.g.*, *Prince v.

Massachusetts*, 321 U.S. 158, 166–67 (1944); *Compagnie Francaise de Navigation a

Vapeur v. La State Bd of Health*, 186 U.S. 380, 393 (1902); *Kansas v Hendricks*, 521

U.S. 346, 356 (1997); *In re Abbott*, 954 F.3d 772, 786 (5th Cir., April 7, 2020); *In re*

*Rutledge*, 956 F.3d 1018 (8th Cir., April 22, 2020).[3] The same is true in recent Sixth Circuit decisions. *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).

Compared to this precedent, the preliminary injunction stands quite alone in its non-deferential application of *Jacobson*. Plaintiffs do not dispute the gravity of the pandemic in Michigan. It is a once-in-a-century kind of epidemiological public health crisis caused by a potentially fatal virus that remains easily transmittable and still lacks adequate treatment, let alone a vaccine. In such times, the State has wide plenary authority to temporarily restrict activity that presents a diffuse but real threat to the public health.

---

[3] Numerous other federal courts across the country have recognized that *Jacobson* is the proper starting point for considering restrictions promulgated in response to the COVID-19 crisis that touch upon constitutional rights. And those courts have routinely held, across a wide range of challenges, that state actions like those at issue here were an appropriate and constitutional response to the scourge of COVID-19. *See, e.g., Open Our Oregon v. Brown*, No. 6:20-CV-773-MC, 2020 WL 2542861 (D. Or. May 19, 2020); *Amato v. Elicker*, No. 3:20-CV-464 (MPS), 2020 WL 2542788 (D. Conn. May 19, 2020); *Geller v. de Blasio*, No. 20CV3566 (DLC), 2020 WL 2520711 (S.D.N.Y. May 18, 2020); *McGhee v. City of Flagstaff*, 2020 WL 2308479 (D. Ariz., May 8, 2020); *Givens v. Newsom*, 2020 WL 2307224 (E.D. Cal., May 8, 2020); *SH3 Health Consulting, LLC v. St. Louis County Exec.*, 2020 WL 2308444 (E.D. Mo., May 8, 2020); *Cross Culture Christian Center v. Newsom*, 2020 WL 2121111 (E.D. Cal., May 5, 2020); *Lighthouse Fellowship Church v. Northam*, 2020 WL 2110416 (E.D. Va., May 1, 2020); *Shows v. Curtis*, 2020 WL 1953621 (W.D. N.C., April 23, 2020); *Gish v. Newsom*, 2020 WL 1979970 (C.D. Cal. April 23, 2020); *Robinson v. Attorney General*, 957 F.3d 1171 (11th Cir. April 23, 2020); *Hartman v. Acton*, No. 2:20-CV-1952, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020); *Lawrence v. Colorado*, No. 120CV00862DDDSKC, 2020 WL 2737811 (D. Colo. Apr. 19, 2020); *Legacy Church, Inc. v. Kunkel*, 2020 WL 1905586 (D. N.M. April 17, 2020).

Under *Jacobson*, judicial deference to the Governor's authority responding to the crisis is paramount. Again, the Court on the surface recognized the rule of law in *Jacobson* but in application relied upon a heightened standard to connect the challenged restrictions to the overarching goals of the State's response to the pandemic. Under these circumstances, a stay is appropriate.

***

For these reasons, as well as the reasons already briefed in response to the preliminary injunction motion, the appeal is likely to succeed. Therefore, the Court's order should be stayed pending appeal.

## V.   Denial of a stay would irreparably harm Defendants and not serve the public interest.

" '[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.' " *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."). These legal principles apply as well to Defendants' executive orders, which were duly authorized under applicable Michigan statutory law. Pandemics are just the sort of fluid crisis that Michigan's public health code and public emergency laws were adopted to address.

Here, the injunction represents a deep, unwarranted intrusion into Michigan's sovereignty and its traditional police powers. The intrusion will be

10

costly on a public health level and from both a federalism and separation of powers point of view.  Judicial tinkering in a public health crisis will have unintended consequences that result in a patchwork of regional and industry-specific carveouts for litigants who race to the courthouse while others accept and comply with the law.  The result will be more litigation, not less, as well as diminished public confidence in the pandemic response, not more.  At a time when collective, coordinated action is critical, judicial off-ramps will only pull at important threads holding together the fabric of the sails pulling the proverbial ship away from the stormy scourge of this virus.  Every thread that is removed or frayed will have unknown, cascading consequences for the broad goal of reaching safe harbor.

**VI.    Grant of a stay would not substantially harm interested parties.**

A stay pending appeal would preserve the status quo.  Accordingly, and for the reasons already briefed in response to the motion for preliminary injunction, a stay would not present substantial harm to Plaintiffs.  In the absence of a stay, a different stay or merits outcome on appeal would potentially cause more disruption and detrimental reliance by Plaintiffs and others who would expend resources on only a fleeting lifting of restrictions under the preliminary injunction.  For non-parties and the general public alike, it is desirable to not lift the restrictions and, if at all, only after a final merits determination on appeal.  Piecemeal lifting of the restrictions for Plaintiffs or certain regions or types of businesses would disadvantage interested parties throughout the State of Michigan.  A stay would

thus benefit interested parties without substantially burdening the limited set of businesses seeking special exemption from the general restrictions.

## CONCLUSION AND RELIEF REQUESTED

Defendants Whitmer and Gordon respectfully request that the Court (1) grant this motion, (2) immediately stay the preliminary injunction pending appeal, and (3) grant any other appropriate relief to Defendants.

Respectfully submitted,

/s/ *John G. Fedynsky*
John G. Fedynsky (P65232)
Assistant Attorney General
Attorney for Defendants
Whitmer and Gordon
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
fednyskyj@michigan.gov
P65232

Dated:  June 19, 2020

## CERTIFICATE OF SERVICE

I certify that on June 19, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

/s/ *John G. Fedynsky*
John G. Fedynsky (P65232)
Assistant Attorney General

12