**DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| LEAGUE OF INDPENDENT FITNESS FACITLITIES AND TRAINERS, INC., BASELINE FITNESS LLC, BUILDING YOUR TEMPLE LLC, BYT FITNESS 247 LLC, CLAWSON FITNESS, LLC, CLINTON FITNESS, INC., D-LUX KARATE UNIVERSITY LLC, FENTON ATHLETIC CLUB, INC., FENTON KARATE, LLC, FUSION FITNESS 24/7 LLC, H3 FITNESS LLC, I FITNESS PERSONAL TRAINING, INC., JKP FITNESS, LLC, JPF ENTERPRISES, LLC, M FITNESS CLUB, LLC, MH & AB LLC, MOTOR CITY CF - ST. CLAIR SHORES, LLC, NASCOT ENTERPRISES, LLC, PRISON CITY PHYSIQUE LLC, RMP FITNESS INC., STRENGTH BEYOND LLC, 24/7 BOOTCAMP AND BOXING INC., and 4 SEASONS GYM, LLC, | Civil No. 1:20-cv-00458  Hon. Paul L. Maloney  ***ORAL ARGUMENT REQUESTED*** |

Plaintiffs,

v.

GRETCHEN E. WHITMER and
ROBERT GORDON,

Defendants.

ERSKINE LAW, PC
Scott M. Erskine (P54734)
Carly Van Thomme (P59706)
Attorneys for Plaintiffs
612 W. University
Rochester, MI. 48307
(248) 601-4499
serskine@erskinelaw.com
cvanthomme@erskinelaw.com

Joseph T. Froehlich (P71887)
Christopher M. Allen (P75329)
Joshua O. Booth (P53847)
John G. Fedynsky (P65232)
Andrew J. Jurgensen (P81123)
Assistant Attorney General
Michigan Department of Attorney General
Attorneys for Defendants
525 West Ottawa Street
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
froehlichj1@michigan.gov
allenc28@michigan.gov
Boothj2@michigan.gov
fedynskyj@michigan.gov
jurgensenA2@michigan.gov

---

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY ***ORAL ARGUMENT REQUESTED***

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STANDARD OF REVIEW ..........................................................................................3

ARGUMENT ...............................................................................................................3

I.      The Court Correctly Effectuated the Intent of a Motion for Preliminary Injunction ..............................................................................................................4

II.     The Court Properly Considered the Separation of Powers Issues in this Matter and Defendants' Arguments are a Motion for Reconsideration .................5

III.    The Court Properly Applied the Standard of Review ....................................7

IV.     The Court Properly Applied the Jacobson Decision ......................................9

V.      Denial of the Stay Does Not Serve the Public Interest ...............................10

VI.     Granting of the Stay Would Substantially Harm Plaintiffs ........................13

CONCLUSION...........................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

*American Tel & Tel Co v. Communications Workers of America*, 985 F2d 855
(CA 6, 1993) ..............................................................................................................5

*Baker v. Adams Co/Ohio Valley Sch Bd*, 310 F3d 927 (6th Cir. 2002) ...............................2

*Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ...................4

*City & Co of San Francisco v. Trump*, 897 F3d 1225, 1234 (9th Cir. 2018) ...................8

*Hall v. Edgewood Partner*, 878 F.3d 524, 526 (6th Cir. 2017) ........................................4

*House of Representatives v. Whitmer*, Case No. 353655 (Mich. Ct. App.)...............................7, 11

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) ...........................................1, 9

*Marysville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020) ...........................7

*Mich Coalition of Radioactive Material Users, Inc v. Griepentrog*, 945 F2d 150
(CA 6, 1991) ..............................................................................................................3

*Midwest Institute of Health, PLLC, et al., v. Gretchen Whitmer, et al.*, Case No.
1:20-cv-00414 ..............................................................................................................11

*South Bay United Pentecostal Church, et al. v. Gavin Newsom, Governor of
California*, 509 U.S. ___ (2020) .........................................................................1, 5, 6

*Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) ......................................4

# INTRODUCTION

Defendants' Motion for Immediate Stay Pending Appeal, which is primarily an improper Motion for Reconsideration, should be denied by this Honorable Court.[1] At the outset, Defendants' opening salvo in their Introduction is an improper motion for reconsideration, setting the stage for its mistaken view of the *purpose* of motions for preliminary injunction. Preliminary injunctions are designed to prevent irreparable injury, and if the existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation *so as to prevent the injury*.

Second, Defendants relitigate the very arguments about separation of powers that they already made in response to Plaintiffs' original motion. Defendants' attempts to expand their arguments on the matter in a new motion should not be overlooked. Finally, the non-binding concurring opinion in *South Bay* is nothing more than that—a non-binding concurrence.

Defendants' third argument fails because this Court applied the correct standard of review. As will be shown below, the Court had the authority to, but did not, apply a heightened standard of review with respect to Defendants' non-legislature-supported executive orders.

Fourth, despite the Defendants' assertions to the contrary, this Court's Order and Opinion cites to and follows *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). Defendants' issue with the Court's ruling is that this Court's learned reading and analysis of the *entire* opinion—not just the cherry-picked quotes in Defendants' brief—leads to a different conclusion than Defendants assert.

---

[1] The timing of the Motion and Brief, citing to 33 cases and filed at 5:48 pm on June 19, 2020, three hours after the Opinion and Order was issued, leads one to believe that all of these arguments were known to Defendants prior to the hearing on the Motion. Arguments not raised during the June 17th Motion hearing could have—and should have—been raised at that time.

Fifth, Defendants now make an argument that *they* will be irreparably harmed. However, their rationale is beyond nonsensical, as the Governor's Orders themselves are nothing but an arbitrary and irrational patchwork of regional carveouts.

Sixth, Defendants' argument that Plaintiffs will not suffer any harm falls flat for the reasons it did in the prior motion.

Finally, Plaintiffs would be remiss if they did not point out that the *real* reason for the Defendants' "no holds barred" approach to this litigation is that no one is allowed to challenge the Governor's complete and total authority. Defendants interchange and posit alternate theories between state and federal courts with reckless abandon, claiming that the Legislature lacks standing to challenge her authority in state court, and simultaneously claiming that private citizens lack standing to challenge her authority. As the Governor stated in a press conference 30 minutes after oral argument in this case, "'[w]e still see attempts to take away my authority to take these actions, which made it all possible in the first place. . . . I want to be very clear: Any attempt to strip away the powers of the governor during this crisis is irresponsible, dangerous and foolish.'"[2]

## STANDARD OF REVIEW

The factors for a motion for a stay pending appeal are as follows: (1) Whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies. *Baker v. Adams Co/Ohio Valley Sch Bd*, 310 F3d 927 (6th Cir. 2002). Further, "[t]hese factors

---

[2] Hutchinson, Derek.  *Michigan Gov. Whitmer calls attempts to strip her powers 'irresponsible, dangerous, foolish.'*  June 17, 2020.
https://www.clickondetroit.com/news/local/2020/06/17/michigan-gov-whitmer-calls-attempts-to-strip-her-powers-irresponsible-dangerous-foolish/

are to be balanced. The strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. However, in order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Id*. At 928.

## ARGUMENT

Before this Court is Defendants' Motion for Stay Pending Appeal. In order for Defendants to successfully argue that a stay is warranted, Defendants have to meet the four factors set forth above. However, a closer look here at the first two factors alone, coupled with specific arguments below as to all of the factors, will show that Defendants cannot meet the high standard for success.

First, this Honorable Court ruled in its Opinion and Order issued June 19, 2020 that *Plaintiffs* have already demonstrated a strong likelihood of success on the merits of this case. Now, for the purpose of this motion, it is incumbent upon Defendants to show a strong likelihood of success on the merits. But Defendants have not directly challenged this Court's ruling, other than to file a notice of their claim of appeal. Instead, they are asking this Court to reverse course and order the inverse of its initial Opinion and Order. Put simply, the same day this Court ruled that "Plaintiffs have a strong likelihood of success," Defendants filed a motion saying, "Defendants have a strong likelihood of success." Defendants have not offered any new arguments to support their position.

Second, as will be shown below, Defendants will not be "irreparably harmed" by the ruling. The courts have explained that "[i]n evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich*

3

*Coalition of Radioactive Material Users, Inc v. Griepentrog*, 945 F2d 150 (CA 6, 1991). "[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id*. at 154. Further, "in order for a reviewing court to adequately consider these four factors, the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Id*.

As will be shown in depth below, Defendants do not offer anything other than speculative harm and provide no specific facts for success on a single factor. The motion should be denied.

## I.   The Court Correctly Effectuated the Intent of a Motion for Preliminary Injunction

Defendants' first argument, presumably to show a likelihood of success on the merits, must fail as a matter of law.  Although Defendants correctly cite *Hall v. Edgewood Partner*, 878 F.3d 524, 526 (6th Cir. 2017), Defendants fail to properly analyze the issue. In *Stenberg v. Cheker Oil Co*., 573 F.2d 921, 925 (6th Cir. 1978), the 6th Circuit opined as follows:

> The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. **If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties by the issuance of a mandatory injunction or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury**. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.
>
> (emphasis added and internal citations omitted)

Clearly, the *Stenberg* decision and others like it,[3] when read in their entirety, serves as a complete understanding of the purpose of injunctive relief. Accordingly, the Court's Order is well

---

[3] See also *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)("It is often loosely stated that the purpose of a preliminary injunction is to preserve the status quo.  Indeed, some such notion may have influenced the district judge in this case, since he wrote of a "status quo that would normally be entitled to temporary protection." **It must not be thought, however, that there is any particular magic in the phrase "status quo."**  The purpose of a preliminary

within its sound discretion and in line with the very purpose of preliminary injunctions. Defendants' argument does nothing demonstrate that Defendant has a strong likelihood of success on the merits and this argument weighs heavily in Plaintiffs' favor.

## II. The Court Properly Considered the Separation of Powers Issues in this Matter and Defendants' Arguments are a Motion for Reconsideration

The body of much of Defendants' second argument is virtually copied and pasted from Defendants' response brief in opposition to Plaintiffs' Motion for Preliminary Injunction. (see Defendant's Brief, PageID.395). As such, it is nothing more than a disguised Motion for Reconsideration. However, even assuming they are not seeking reconsideration, the Defendants' argument that the court failed to follow *South Bay United Pentecostal Church, et al. v. Gavin Newsom, Governor of California*, 509 U.S. ___ (2020) is insincere.

First, Defendants certainly cannot mean to insinuate that this Honorable Court failed to follow the precedent set by *South Bay*, *supra*. As Defendants are well aware, in *South Bay* the United States Supreme Court issued a one sentence denial of an application for leave. Defendants instead cite to the non-binding concurrence, which is not precedent.  See *American Tel & Tel Co v. Communications Workers of America*, 985 F2d 855 (CA 6, 1993).

Second, as was explained at oral argument, the facts of *South Bay, supra*, are dissimilar to the case at bar. The plaintiff in *South Bay* was not arguing that the church was closed, it was merely arguing that capacity limits set by the Governor should not apply to it. In this case, *the Plaintiffs*

---

injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.") (internal quotations omitted, emphasis added).

*are not permitted to open at all*. Since there is no majority opinion to rely on and a very short concurrence by Justice Roberts, attributing any meaning to and extrapolating Justice Roberts' commentary is not helpful in this context. In fact, it is not at all certain that the highest court would have denied review this case if the church was completely shuttered by the Governor's Order.

Relying on its non-binding precedential value, Defendants nonetheless argue that this Court discarded and failed to follow the concurrence in *South Bay*. In reality, even despite its lack of binding precedential value, this Honorable Court dissected the entire concurrence, applied the facts to this case, and found Defendants' position regarding the application of the concurrence to the instant matter lacking. (See (42) Opinion, PageID.1116-1117). Importantly, this Court included in its analysis of South Bay that "California's Order treated all large gatherings similarly…." (See (42) Opinion, PageID.1116).

This Court properly reviewed and considered Defendants' Separation of Power assertions and, as such, Defendant has failed to show that it has a strong likelihood of success on the merits with their argument.

### III.    The Court Properly Applied the Standard of Review

The Defendants argue that the Court improperly applied a "heightened" standard for rational basis review; however, the Court's opinion sufficiently details its reasoning and includes no such "heightened" standard. Rather, the Court applied the framework in *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (Mem) (U.S. 2020) (Roberts, C.J., concurring) to the situation at hand and determined that, unlike California's similar treatment of all large group gatherings, the state of Michigan "has begun to chip away" at what was initially a "broad closure" of businesses and

> [m]any indoor venues and indoor activities are now permitted: retail is now open with some restrictions, restaurants and bars may serve patrons at limited capacity,

nail and hair salons and tattoo parlors can provide grooming services, children's camps can resume service, and even indoor gaming venues like bowling alleys, climbing facilities, and nightclubs can open subject to capacity limits. But indoor gyms and other fitness facilities remain closed.

(**PageID.1117-1118**).

The Court also followed *Marysville Baptist Church, Inc. v. Beshear*, noting that numerous exceptions to a prohibition remove it from the category of a "generally applicable, non-discriminatory law." 957 F.3d 610, 614 (6th Cir. 2020). There can be no serious dispute that this Court recognized that the standard here is "extremely deferential" to Defendants and explained that, if it could have conceived of any set of facts that would support the Defendants' position, it would have done so. (**PageID.1119**). Yet, Defendants were not able to provide <u>any</u> rational basis for the differential treatment of gyms and fitness facilities—only the "bare assertion" that gyms are dangerous, which is insufficient given the differential treatment of many similar categories of businesses. (***Id.***).

Even if the Court's reasoning was based on some "heightened" version of the rational basis standard, such a standard is warranted in this case. The Michigan legislature has actively contested Defendant Governor Whitmer's authority in issuing executive orders such as the ones at issue in this matter and continues to do so. *House of Representatives v. Whitmer*, Case No. 353655 (Mich. Ct. App.). Indeed, the Court, like the legislature, is rightfully concerned with the slippery slope that Defendants' position represents:

> The argument presented to the Court on this motion, however, points out a different slope the Defendants may create: if Defendants can open or close any sector of the economy, at will, with nothing more than a vague reference that it is "dangerous," the potential for abuse is palpable.

(***Id.***).

Along these same lines, the Court must be mindful of the fact that, unlike executive orders, legislation is a "step-by-step, deliberate and deliberative process," and where a legislative body has "considered and thus far rejected legislation accomplishing the goals of" executive orders, demonstrating "the importance and divisiveness of the policies in play," there is a heightened concern surrounding the fundamental constitutional principle of separation of powers[4]. *See, e.g., City & Co of San Francisco v. Trump*, 897 F3d 1225, 1234 (9th Cir. 2018). The fact that Michigan's state legislature is suing Defendant Governor Whitmer highlights the "divisiveness of the policies in play" here and justifies a "heightened" review, if indeed the Court applied such a standard, which Plaintiffs maintain it did not.

Finally, Defendants take the position in this section of their brief that the motion process was unfair to them because they were not afforded an opportunity to present evidence or make proper arguments.[5] However, Defendants never raised this perceived unfairness in their 33-page Response Brief or during the hour-and-a-half long oral argument on Plaintiffs' Motion for Preliminary Injunction. In fact, Defendants took the position at oral argument that the Court must try to find any conceivable rationale for Defendants' position.

## IV.     The Court Properly Applied the *Jacobson* Decision

Once again, Defendants' criticism of this Honorable Court's decision reads like a motion for reconsideration. And once again, Defendants' argument that this Honorable Court did not give

---

[4] Like the U.S. Constitution, the state of Michigan's Constitution provides for separation of powers at Art. III, § 2.

[5] Plaintiffs point out that they were able to file a Reply brief to Defendants' Response brief with supporting facts and affidavits in three business days, and were able to research, analyze and draft the instant brief in zero business days, all without asserting an unfair timeline. It is also necessary to point out that Defendants' unfairness argument—lack of a meaningful ability to be heard—is ironically similar to Plaintiffs' assertions of lack of due process in their complete closure. Except in that instance, the Defendants had over three months to afford Plaintiffs a meaningful and just hearing.

the *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11 (1905) decision "due deference" is disingenuous at best.

This Honorable Court's analysis of *Jacobson* was thorough and certainly much more complete than Defendants' own analysis. For example, this Honorable Court quoted parts of the *Jacobson* opinion that Defendants intentionally left out regarding the limitations of police power. This Court noted the following passage from *Jacobson*:

> [t]he state's police power "might be exercised in particular circumstances and in reference to particular persons in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons." Id. at 28. Thus, restrictions may be subject to judicial review if the challenged action "has no real or substantial relation to those objects [of securing public health and safety], or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id*. at 31.
>
> See (42) Opinion, PageID.1114-1115.

This Court also acknowledged that two recent Sixth Circuit opinions have made it clear that *Jacobson* is the *starting point* for an analysis, it is not the only analysis. Finally, after applying the correct standard and performing an analysis of the briefed arguments, as well as the arguments made by both parties at oral argument, this Court came to a conclusion that was sound; the Defendants provided the Court with nothing to reach a conclusion other than the one it reached. There is simply nowhere in the Opinion and Order to support a different conclusion. Defendant has not shown that it satisfies any of the factors with this argument.

**V.     Denial of the Stay Does Not Serve the Public Interest**

Defendants string-cite several cases that stand for the proposition that in general, when a statute is enjoined, the State suffers harm. Defendants opine that public confidence in the Governor's executive orders will erode, there will be an increase in litigation, and that increase will result in a patchwork of regional and industry specific carveouts of the orders. However,

9

Defendants offer no facts or evidence to support their position. Defendants simply engage in speculation and conjecture of the alleged harm that they will suffer.

Defendants fail to point out that public confidence in the Governor's Executive Orders has already been eroded throughout the state. There have been multiple protests over the last several months against the Governor's executive orders in Lansing, to her great consternation. One protest, known as "Operation Gridlock," drew between 3,000 and 4,000 protesters to Lansing on April 15, 2020.[6] Another protest at the Capitol took place on April 30, 2020 after the Governor declared a new state of emergency in Michigan.[7] A third large protest against the executive orders occurred on May 14, 2020.[8] And, of course, no one can forget the great uprising over the Defendants' relentless pursuit of Carl the Barber.[9]

Further eroding the public confidence in the Governor's Orders is the Governor's failure to abide by her own Orders. As Plaintiffs pointed out in their Brief in Support of their Motion for Preliminary Injunction, the Governor hasn't followed her own "strict social distancing" guidelines in attending a protest, walking and kneeling shoulder to shoulder with other mask-less protesters, none of whom were observing the Order to stay six feet apart. Even more recently, the Governor

---

[6] Smith, *'Lock her up!': Anti-Whitmer coronavirus lockdown protesters swarm Michigan Capitol*, NBC News (April 15, 2020)(https://www.nbcnews.com/politics/politics-news/lock-her-anti-whitmer-coronavirus-lockdown-protestors-swarm-michigan-capitol-n1184426).

[7] Beckett, *Armed Protesters demonstrate against Covid-19 lockdown at Michigan Capitol*, The Guardian (April 30, 2020)(https://www.theguardian.com/us-news/2020/apr/30/michigan-protests-coronavirus-lockdown-armed-capitol)

[8] Spangler, *Whitmer: Many legislators incited Capitol protest – then didn't want to be there*, Detroit Free Press (May 15, 2020)(https://www.freep.com/story/news/local/michigan/2020/05/15/whitmer-stay-home-order-michigan-coronavirus-cnn/5197074002/).

[9] Eggert, *7 barbers ticketed for cutting hair at Michigan protest*, The Detroit Free Press (May 20, 2020) (https://www.freep.com/story/money/business/michigan/2020/05/20/barbers-ticketed-cutting-hair-capitol-protest-coronavirus/5233344002/).

had a "photo op" at a restaurant in Detroit and failed to maintain social distancing *again* when she stood in immediate proximity and at times touching the other employees therein.[10]

Then too, the Opinion of this Honorable Court rightfully points out "that both it and the Michigan Courts have already been deluged with litigation seeking the same." (See (42) Opinion, PageID.1119). In addition to the instant litigation, this Court's Opinion cites ten cases challenging the Governor's authority (and there are most likely more). In one of those cases, *House of Representatives v. Whitmer*, Case No. 353655 (Mich. Ct. App.) the Michigan legislature has sued the Governor claiming that the Governor doesn't have the authority to issue executive orders under the Emergency Powers of the Governors Act ("EPGA") or the Emergency Management Act ("EMA"). That case is currently pending in the Michigan Court of Appeals. More recently, in another case cited by this Court, *Midwest Institute of Health, PLLC, et al., v. Gretchen Whitmer, et al.*, Case No. 1:20-cv-00414, ongoing and contentious litigation between the Governor and the plaintiffs has resulted in this Honorable Court certifying two questions of law to the Michigan Supreme Court.

Regardless of the outcome of the lawsuits challenging the Governor's authority and regardless of the erosion of public support for the executive orders, one thing is certain: The public confidence in the executive orders was eroding and has continued to erode without any assistance from this Honorable Court's ruling.

Likewise, there has *already* been piecemeal lifting of restrictions through Defendants' own "plan" to reengage the state without the assistance of this Court or these Plaintiffs. At the motion

---

[10] Bartkowiak, Jr., *Whitmer serves up Coney dogs in Detroit: 'We can't let our guard down,'* clickondetroit.com (June 18, 2020) (https://www.clickondetroit.com/news/local/2020/06/18/whitmer-serves-up-coney-dogs-in-detroit-we-cant-let-our-guard-down/).

for preliminary injunction hearing, Plaintiffs pointed out to this Honorable Court an example of the patchwork system that the Governor has implemented. The Governor has rolled out a "plan" called "MI Safe Start."[11] However, she has not followed her own "plan." For example, restaurants and bars were to open in Phase 5. However, the Governor has opened restaurants and bars in Phase 4 across the entire state without an explanation as to why. She also opened salons and other personal service businesses statewide, even though those businesses were in Phase 5 and the entire state—other than Regions Six and Eight (where COVID-19 does not go)—remains in Phase 4.

Further adding to the confusion, the fitness industry is not even on the "plan," but was nonetheless opened in Phase 5 for Regions Six and Eight on June 15, 2020. However, the Governor has insinuated through her media response to this Court's Opinion and Order and the State's immediate appeal of that Order that while the remainder of the state "may" be placed into Phase 5 by the fourth of July, that order will not include gyms, thus removing them from Phase 5 for the state's lower peninsula.[12] While Plaintiffs are thrilled for restaurants and bars and many other sectors of the economy that are allowed to open and certainly are not advocating that they be closed, the Governor's failure to follow her own plan leaves the citizens of this state more confused and helpless than ever by *her own* patchwork approach.

---

[11] See https://www.michigan.gov/documents/whitmer/MI_SAFE_START_PLAN_689875_7.pdf
[12] "With this ruling, the court is playing a dangerous role it should not play: second-guessing and upending the data-informed decisions that have saved thousands of lives in Michigan," Whitmer spokeswoman Tiffany Brown said. "The idea that gyms — with their high levels of heavy respiratory activity, shared indoor spaces, and shared surfaces — might be one of the later businesses to come back online in the midst of this global pandemic is hardly surprising and highly sensible." LeBlanc & Jones, *Federal Judge Orders Michigan Gyms Reopened June 25; Whitmer to Appeal*, Detroit Free Press (June 19, 2020) (https://www.detroitnews.com/story/news/local/michigan/2020/06/19/federal-judge-orders-michigan-gyms-reopened-june-25/3225063001/).

Therefore, Plaintiffs submit that the evidence they provided, coupled with the speculation and lack of any evidence provided by Defendants, make it clear that the "irreparable harm" factor weighs heavily in favor of Plaintiffs.

**VI.     Granting of the Stay Would Substantially Harm Plaintiffs**

Finally, Defendants continue with the narrative that the Governor has not harmed gym owners by shuttering their businesses for what will be 14 weeks on the day that this Response is filed. Now that this Honorable Court has held that Plaintiffs will suffer irreparable harm without an injunction, the Governor and Director still continue their borderline-offensive narrative that Plaintiffs—citizens of this state and the Governor's constituents—have not been harmed.

Adding to that, Defendants now push the false "status quo" argument discussed above as a reason that a stay in this matter will continue to "not harm" the Plaintiffs. In fact, Defendants add to the argument and now claim that Plaintiffs should remain closed under a stay of this Court's Order *to protect Plaintiffs from Defendants' certain appellate victory and forced reclosure after opening on June 25*. In other words, "Trust us. We're the government. We are really protecting you from yourselves."

Despite all of the Defendants' rhetoric, one thing is clear. This Honorable Court has already ruled that Plaintiffs will suffer irreparable harm without an injunction. This Motion is not seeking a reversal of that Order. The Defendants present no facts or affidavits for their assertions. Accordingly, this factor must be decided in Plaintiffs' favor as the Court has already correctly ruled that Plaintiffs' are at risk for irreparable harm.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion for Stay in its entirety.

Dated: June 22, 2020                     Respectfully submitted,

                                            /s/ Scott M. Erskine
                                            SCOTT M. ERSKINE (P54714)
                                            CARLY VAN THOMME (P59706)
                                            ERSKINE LAW, PC
                                            Attorneys for Plaintiffs
                                            612 West University Drive
                                            Rochester, Michigan 48307
                                            (248) 601-4497
                                            serskine@erskinelaw.com

14

## **PROOF OF SERVICE**

I hereby certify that on June 22, 2020, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

s/ Scott M. Erskine
SCOTT M. ERSKINE (P54714)
CARLY VAN THOMME (P59706)
ERSKINE LAW, PC
Attorneys for Plaintiffs
612 West University Drive
Rochester, Michigan 48307
(248) 601-4497
serskine@erskinelaw.com
cvanthomme@erskinelaw.com