UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF INDEPENDENT
FITNESS FACILITIES AND
TRAINERS, INC., BASELINE
FITNESS LLC, BUILDING
YOUR TEMPLE LLC,
BYT FITNESS 247 LLC,
CLAWSON FITNESS, LLC,
CLINTON FITNESS, INC.,
D-LUX KARATE UNIVERSITY,
LLC, FENTON ATHLETIC CLUB,
INC., FENTON KARATE, LLC,
FUSION FITNESS 24/7 LLC,
H3 FITNESS LLC, I FITNESS
PERSONAL TRAINING, INC.,
JKP FITNESS, LLC, JPF
ENTERPRISES, LLC, M FITNESS
CLUB, LLC, MH & AB LLC,
MOTOR CITY CF – ST. CLAIR
SHORES, LLC, NASCOT
ENTERPRISES, LLC, PRISON CITY
PHYSIQUE, LLC, RMP FITNESS INC.,
STRENGTH BEYOND LLC, 24/7
BOOTCAMP AND BOXING, INC., and
4 SEASONS GYM, LLC,

     Plaintiffs,

v

GRETCHEN E. WHITMER and
ROBERT E. GORDON,

     Defendants.

No. 20-cv-00458

HON. PAUL L. MALONEY

**REPLY BRIEF IN SUPPORT
OF DEFENDANTS'
MOTION TO DISMISS**

_____

| | |
|---|---|
| Scott M. Erskine (P54734) | John G. Fedynsky (P65232) |
| Carly Van Thomme (P59706) | Andrew J. Jurgensen (P81123) |
| Erskine Law, P.C. | Joseph T. Froehlich (P71887) |
| Attorneys for Plaintiffs | Joshua O. Booth (P53847) |
| 612 W. University | Christopher M. Allen (P75329) |
| Rochester, MI 48307 | Assistant Attorneys General |

| | |
|---|---|
| (248) 601-4499<br>serskine@erskinelaw.com<br>cvanthomme@erskinelaw.com | Attorneys for Defendants<br>Michigan Dep't of Attorney General<br>State Operations Division<br>P.O. Box 30754<br>Lansing, MI 48909<br>(517) 335-7573<br>fedynskyj@michigan.gov<br>jurgensena2@michigan.gov<br>froehlichj1@michigan.gov<br>boothj2@michigan.gov<br>allenc28@michigan.gov |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

ii

## TABLE OF CONTENTS

Page

Table of Contents ................................................................................................... iii

Concise Statement of Issues Presented ..................................................................... iv

Controlling or Most Appropriate Authority ............................................................... iv

Introduction .............................................................................................................. 5

Argument .................................................................................................................. 5

Rational basis review applies. ................................................................................... 5

Rational basis review is met. ..................................................................................... 7

Plaintiffs otherwise fail to state any viable claims. .................................................. 11

Conclusion and Relief Requested ............................................................................ 14

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Are Plaintiffs' claims foreclosed by the Sixth Circuit's stay order in this case as well as recent outcomes in this Court's cognate cases?

2. Do Plaintiffs fail to overcome rational basis review and otherwise fail to state a claim?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*Baker Events, LLC v. Whitmer, et al*, W.D. Mich. No. 20-cv-654 (July 23, 2020).

*CH Royal Oak, LLC v. Whitmer, et al.*, W.D. Mich. No. 20-cv-570 (July 16, 2020).

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

*LIFFT v. Whitmer, et al.*, ___ F.3d ___ (slip opinion), Sixth Cir. No. 20-1581 (June 24, 2020).

# INTRODUCTION

Crises like COVID-19 can call for quick, decisive measures to save lives. Yet those measures can have extreme costs—costs that often are not borne evenly. The decision to impose those costs rests with the political branches of government, in this case, Governor Whitmer. *LIFFT v. Whitmer, et al.*, ___ F.3d ___ (slip opinion), Sixth Cir. No. 20-1581 (June 24, 2020). (Exhibit 1 at pg. 7.)

\*\*\*

Under *Jacobson*, the Court cannot second-guess the executive's power in a pandemic unless the executive promulgates a completely baseless rule. *CH Royal Oak, LLC v. Whitmer, et al.*, W.D. Mich. No. 20-cv-570 (July 16, 2020) (citing *LIFFT*). (Exhibit 2 at pg. 12.)

After this motion to dismiss was filed, the Sixth Circuit granted a stay of the preliminary injunction pending appeal. Pursuant to that stay order, Plaintiffs are left with no viable constitutional challenge. Apart from the binding law of this case, outcomes in cognate cases and other pandemic-related cases across the country have uniformly turned away the species of claims brought here. Under applicable rational basis review, there is eminent reason to restrict the public from using commercial indoor fitness facilities. The motion should be granted because there is no basis for the Court to decide "what is fundamentally a regulatory tussle, rather than a constitutional matter." *Baker Events, LLC v. Whitmer, et al*, W.D. Mich. No. 20-cv-654 (July 23, 2020). (Exhibit 3 at pg. 6.)

# ARGUMENT

**Rational basis review applies.**

The Sixth Circuit already applied rational basis review to this case when it granted a stay of the injunction order pending appeal. That legal outcome did not

5

hinge on the parties' stipulation, the specific claims implicated by the injunction order, or on Plaintiffs' own characterization of the rights at stake. Instead, the Sixth Circuit rightly recognized that, under controlling law, no higher scrutiny was warranted here.[1] Indeed, all that is at stake in this case is the regulation of one particular form of commercial activity—the provision of indoor gym services—given the especially high risks of COVID-19 infection and spread that it poses. This is a temporary economic regulation, and a limited one in scope, permitting a variety of other, lower-risk avenues of commercial fitness-related activity: (1) outdoor gym services, (2) remote gym services (such as recorded or live online classes), (3) in-home gym services (such as in-home personal training), and (4) the sale of products (via delivery, curbside pickup, outdoor classes, or any other manner consistent with the orders).

As the Sixth Circuit's ruling reflects, Plaintiffs cannot avoid rational-basis review by attempting to cloak their challenges to this economic regulation under the mantle of fundamental rights. This Court has correspondingly, and correctly, rejected such attempts in other cases. This Court upheld a generally applicable rule against opening movie theaters in certain regions despite the claim that a particular theater wanted to open and invite the public for purposes of a political protest. "[T]he order is directed at protecting the public health by keeping business that present a heightened risk of coronavirus infection from opening." *CH Royal*

---

[1] Plaintiffs sought a higher level of scrutiny in their motion to reconsider the stay order, which the Sixth Circuit denied on July 7, 2020.

*Oak* at 9. Similarly, this Court denied emergent relief for a banquet hall asserting a First Amendment right to rent its space to host weddings that would exceed generally applicable limits on the number of attendees. "[T]he relief requested doesn't focus much on this Friday's wedding at all; instead, it focuses on the overall wedding business of Baker Events and seeks a judicial re-write of the regulatory terms of the Governor's Executive Order . . . ." *Baker Events* at 6.)[2] Under both the law of the case and the law of cognate cases, rational basis review applies here.

**Rational basis review is met.**

Plaintiffs argue there is no rational basis in this pandemic to restrict the public from using indoor commercial fitness facilities. Again, there is no daylight for this argument under what the Sixth Circuit already decided in its stay order. Consider relevant portions of the substantive content of that order:

• Today's case similarly fits that deferential mold. *LIFFT* at 2.

• All agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts. *Id.* at 3, citing *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905).

• [T]he Governor's action is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. *Id.* at 4, quotation omitted.

---

[2] These decisions align not only with the Sixth Circuit's ruling in this case, but with the decisions of other courts in similar cases. *See, e.g.*, Defs' Brief in Support of Motion to Dismiss, p. 31 n. 23 (collecting illustrative cases rejecting constitutional challenges to restrictions on business operations); *Talleywhacker, Inc. v. Cooper*, No. 5:20-CV-218-FL, 2020 WL 3051207 (E.D.N.C. June 8, 2020) (closure of entertainment venues); *Best Supplement Guide, LLC v. Newsom*, No. 220-CV-00965-JAMCKD, 2020 WL 2615022 (E.D. Cal. May 22, 2020) (closure of gyms).

7

• [T]he Governor was not required to explain that [policy] choice at all, let alone exhaustively. *Id*. at 4-5, citation omitted.

• The idea that heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus is a paradigmatic example of "rational speculation" that fairly supports the Governor's treatment of indoor fitness facilities. *Id*. at 5.

• Whether the Governor's Order is unsupported by evidence or empirical data in the record does not undermine her decision . . . . *Id.*, quotation omitted.

• [T]he Governor's order need not be the most effective or least restrictive measure possible to attempt to stem the spread of COVID-19. Shaping the precise contours of public health measures entails some difficult line-drawing. Our Constitution wisely leaves that task to officials directly accountable to the people. *Id*. at 6, citations omitted.

• Even if imperfect, the Governor's Order passes muster under the rational basis test. *Id*.

• Though Plaintiffs bear the very real risk of losing their businesses, the Governor's interest in combatting COVID-19 is at least equally significant. To date, the disease has infected thousands of Michiganders, and it has shown the potential to infect many more. *Id*. at 6-7.

So there is little left here for this Court to decide. The writing above is binding and it is quite literally on the wall: Plaintiffs' claims fail as a matter of law.

To avoid that legal inevitability, Plaintiffs point to the loosening of restrictions in other regions and other sectors of Michigan's economy. But that attempt is misdirected both legally and factually. As a matter of law, Plaintiffs' points are irrelevant. "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 321 (1993). Accordingly, there is no constitutional mandate for any regulation to treat indoor gyms the same as other

businesses, even where there may be some overlap in what they do or how they are described.

Factually, Plaintiffs' points fare no better. For instance, in both number and kind, indoor gyms are not the same as professional sports, college sports, or overnight youth camps. As a matter of both public policy and constitutional law, there is no mandate to lump all these distinct categories together. Importantly, each example Plaintiffs cites are not currently open to the general public, and certainly not in the vast numbers and geographic ubiquity that a statewide opening of private indoor gyms would present. It makes eminent sense to not impose the same restrictions on insular work, college, and camp settings that do not pose the same magnitude of risk as indoor gym facilities open to the general public.

More fundamentally, there is no constitutional requirement that would impose the same policy choices on these various settings. And indeed, this would be true even if these other settings posed precisely the same magnitude of risk as opening indoor gyms throughout the state to the public. In managing this pandemic, it is perfectly rational and constitutional for the Governor to reopen similar sectors of the economy, or recommence similar activities, incrementally

rather than all at once, so as to avoid an abrupt surge in the resumption of risk-carrying activity and, with it, a steep resurgence of the virus's spread.[3]

Similarly, there is no constitutional imperative that would require the opening of all indoor gyms statewide just because certain regions of the state, due to the lower prevalence of the virus within them, are currently subject to more relaxed restrictions. By Plaintiffs' logic, the opening of indoor gyms anywhere in Michigan would mandate their opening everywhere – regardless of local conditions, numbers of cases, health system capacities, recent trends, etc. That outcome would defy reason and turn rational basis review on its head – as would any argument that restricting one sector should necessarily include closing other sectors. Again, these are difficult questions of public policy that are entrusted to the political branches, and not matters that give rise to actionable constitutional claims in this case. *See, e.g., LIFFT* at 5-6 (explaining that "the Governor's order need not be the most effective or least restrictive measure possible to attempt to stem the spread of COVID-19" nor need it "close every venue in which the virus might easily spread,"

---

[3] Indeed, recent experience has shown that even closed settings like college and professional sports face real challenges in avoiding the spread of the virus—which only further counsels in favor of the cautious, incremental approach the Governor has taken to reopening.

*Michigan State the Latest and Most Significant Victim of College Football's Biggest Obstacle: Contact Tracing's 14-Day Quarantine*, Sports Illustrated, July 25, 2020, available at: https://www.si.com/college/2020/07/25/michigan-state-football-quarantine-coronavirus-contact-tracing  (Exhibit 4.)

*Marlins' coronavirus outbreak prompts postponement of games, has sports world on edge*, Los Angeles Times, July 27, 2020, available at: https://www.latimes.com/sports/story/2020-07-27/marlins-coronavirus-outbreak-games-postponed-nfl-nba-nhl  (Exhibit 5.)

and "we must accept the Governor's generalizations even when there is an imperfect fit between means and ends") (cleaned up); *Talleywhacker,* 2020 WL 3051207 at *8-12 (rejecting challenge to closure of certain businesses on the basis of claimed unfavorable treatment relative to other businesses).

"Under *Jacobson*, the Court cannot second-guess the executive's power in a pandemic unless the executive promulgates a completely baseless rule." *CH Royal Oak* at 12. The Sixth Circuit has already, and rightly, rejected Plaintiffs' argument that they are subject to a completely baseless rule: "[e]ven if imperfect, the Governor's Order passes muster under the rational basis test." *LIFFT* at 6. Plaintiffs have thus fallen far short of meeting the applicable standard, and their claims fail as a matter of law.

**Plaintiffs otherwise fail to state any viable claims.**

Plaintiffs' response brief concedes that Eleventh Amendment immunity bars their claims under Michigan law. (Pls' Resp. at 16.) Plaintiffs also concede that this Court should dismiss their privileges and/or immunities claims. (*Id.* at 16.) That leaves claims under the equal protection clause, the due process clause (both procedural and substantive), the dormant commerce clause, and the void-for-vagueness doctrine. For the reasons already stated, rational basis review is met and none of these claims are viable. And contrary to Plaintiffs' suggestion, they cannot cure the legal deficiencies of their claims by rote invocation of Rule 12(b)(6) and a conclusory demand for discovery. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining "legal conclusions," including when "couched as a factual

11

allegation," "mere conclusory statements," and "naked assertions devoid of further factual enhancement" are not sufficient to "show[]" a "plausible"—and not simply "possible" or "conceivable"—claim for relief).

To start, the regulation of business at issue in this case—which, again, temporarily limits businesses in providing of one type of particularly high-risk gym service while permitting them to continue to provide other, lower-risk gym services—simply does not "impinge on fundamental rights" for purposes of equal protection or any other constitutional claim. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 (2010). Furthermore, for procedural due process, Plaintiffs continue to insist that they are entitled to post-deprivation review, but they fail to rebut the settled law foreclosing their challenge, *see, e.g.*, *Hartman v Acton*, No. 2:20-CV-1952, 2020 WL 1932896, at *6-10 (S.D. Ohio Apr. 21, 2020) (reviewing such law), and still have not identified what additional process would have been due here, nor how it would have made any difference. The Constitution requires only a basic level of process, reasonable under the circumstances. *Morissey v. Brewer*, 408 U.S. 471, 481 (1972). And as already briefed, the purpose of any such post-deprivation process would be to enable a claimant to make a showing of mistaken or unjustified deprivation. Plaintiffs, however, do not dispute that they are correctly viewed as subject to the order's regulation. They just fundamentally and categorically disagree with that regulation. Plaintiffs have not plausibly shown that they are constitutionally entitled to any more process here.

Similarly, and for reasons already briefed, Plaintiffs cannot show any protected interest or government misconduct that would make actionable any substantive due process claim. For their dormant commerce clause claim, Plaintiffs simply allege in conclusory fashion that some portion of their annual business comes from out-of-state visitors, with no allegations to show how any such impairment of that business from the regulation in question could satisfy the legal standard necessary for a dormant commerce clause violation. And indeed, the Sixth Circuit has already held that Defendants' regulatory interests are "at least equally significant" as Plaintiffs' commercial interests. *LIFFT* at 6-7. As such, Plaintiffs cannot show, as they must, that the burden on interstate commerce is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Finally, there is no plausible claim here that a public health regulation already upheld by the Sixth Circuit should be invalidated as void for vagueness, when Plaintiffs have not even alleged any facts showing confusion on their part regarding the regulation's applicability to them, nor arbitrary or selective enforcement of it against them. Nor, for that matter, do Plaintiffs acknowledge that "the Supreme Court has made clear that the void for vagueness doctrine is applied less strictly to economic regulations." *Johnson v. Morales*, 946 F.3d 911, 929 (6th Cir. 2020); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982) (explaining, among other things, that "the regulated

enterprise may have the ability to clarify the meaning of the regulation by its own inquiry").

For the reasons discussed above and in Defendants' principal brief, Plaintiffs' claims all lack merit and fail as a matter of law. The Sixth Circuit has already recognized as much. This Court should do the same and dismiss all claims.

## CONCLUSION AND RELIEF REQUESTED

Defendants Whitmer and Gordon respectfully request that the Court (1) grant this motion, (2) dismiss all claims, and (3) grant any other appropriate relief to Defendants.

Respectfully submitted,

Dana Nessel
Attorney General


*/s/ John G. Fedynsky (P65232)*
John G. Fedynsky (P65232)
Andrew J. Jurgensen (P81123)
Joseph T. Froehlich (P71887)
Joshua O. Booth (P53847)
Christopher M. Allen (P75329)
Assistant Attorneys General
Attorneys for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
jurgensena2@michigan.gov
froehlichj1@michigan.gov
boothj2@michigan.gov
allenc28@michigan.gov

Dated: July 30, 2020

## CERTIFICATE OF SERVICE

      I certify that on July 30, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

                                      */s/ John G. Fedynsky*
                                      John G. Fedynsky (P65232)
                                      Assistant Attorney General